J-A24003-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| N.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| V.S. | |
| Appellant | No. 793 EDA 2014 |

Appeal from the Order Entered February 11, 2014
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): OC-10-00775

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:               **FILED SEPTEMBER 29, 2014**

Appellant, V.S. ("Mother"), appeals from the order entered in the Philadelphia County Court of Common Pleas, which granted Appellee, N.W.'s ("Father"), petition to transfer venue in this custody matter to Montgomery County. We affirm.

The trial court's opinion set forth the relevant facts and procedural history of this case as follows:

> [A]fter the birth of the child [in October 2008], Mother and Father lived in Montgomery County for two to three months, after which time Mother returned to Philadelphia. Father has continued to reside in Montgomery County and all periods of partial custody with the child have occurred and continue to occur in Montgomery County, except for the brief period of supervised partial physical custody at the court nursery in Philadelphia in February, 2012.

---

*Retired Senior Judge assigned to the Superior Court.

The child's paternal grandparents, in whose home Father's partial physical custody has occurred since September, 2010, and who provided supervision for Father's periods of partial custody when required, testified at the May 15, 2013 hearing. They reside in Montgomery County, and among other activities they enjoy with the child is taking her to Mass on Sundays when she is in Father's custody. The child's paternal great-grandmother also lives in Montgomery County, where Father resides when he does not have periods of custody. On the same street as paternal grandmother live[s] Father's cousin Alexa, Aunt Carol, Uncle Bill, Uncle Gussy, Alexa's adopted child Rocco (age three), who is the child's playmate, as well as two daughters of Father's cousin Justin, who are six and eight years old. In addition to the numerous family members who spend time with the child, children of Father's friends are also friends of the child, and come to play at the park across from the home of paternal great-grandmother. Other play areas are located on the street where paternal grandparents live.

Mother lived with the child in Philadelphia since 2010. She testified at the hearing on May 15, 2013, that she intended to move to Chester County to live in the home recently purchased by her boyfriend, for which settlement was scheduled on May 16, 2013.

\* \* \*

The first filing in the custody matter occurred on April 27, 2010, when Father filed a Complaint for Custody. An Order was entered on September 20, 2010, pursuant to which Mother retained primary physical custody and Father was to have partial physical custody every weekend from Saturday morning to Monday morning, plus every Thursday afternoon, at the home of paternal grandmother or paternal great-grandmother in Montgomery County. Legal custody was shared between the parties. On February 22, 2011, another Stipulation was entered providing holiday custody time for Father at Christmas, Easter, Halloween, Thanksgiving and on Father's Day.

On November 3, 2011, Mother filed a Petition for Modification, requesting strict supervision of Father's

partial physical custody on account of allegations of sexual abuse of the child, resulting in an interim modified order on February 7, 2012, for supervised partial physical custody for Father at the court nursery on alternating Sundays.

The parties entered into an agreement on February 23, 2012, for the appointment of an evaluator concerning the allegations of abuse. On March 21, 2012, an interim order was entered for Father to have supervised partial physical custody on three Tuesday afternoons each month for two (2) hours each at the home of paternal great-grandmother. On September 18, 2012, another interim order was entered pending a full hearing, providing for supervised partial physical custody for Father on alternating weekends at the home of paternal great-grandmother or paternal grandmother, from Friday to Sunday, and every Tuesday overnight to Wednesday morning. A holiday schedule was also included.

Mother served Father Notice of Relocation to Coatesville, Pennsylvania, in Chester County, sometime in early 2013, to which Father filed a Counter-Affidavit objecting to same on March 4, 2013. The relocation matter was consolidated for a hearing with the outstanding custody petition on May 14, 2013.

After the hearing on May 14, 2013, an interim order was entered, pending receipt of proposals for vacation and holiday time, continuing the above partial physical custody schedule for Father, unsupervised. On June 27, 2013 a final order was entered providing that the parties share legal custody, Mother retained primary physical custody, and Father had partial physical custody on alternating weekends, plus one weekday overnight every other week. Father's weekend time was extended from Friday afternoon to Tuesday morning and his weekday custody was set for alternating weeks from 8:00 a.m. Monday morning to 3:00 pm. Tuesday afternoon. A week of vacation and an extended holiday schedule were also included.

The custody evaluator had concluded that the allegations concerning sexual abuse were unfounded. In addition, the

court concluded that Section 5337 of the custody code concerning relocation did not apply because there was no significant increase in the distance or travel time between the parties with Mother's move to Chester County.

*       *       *

Father filed a [Petition] to Transfer Venue to Montgomery County on August [9], 2013, after a final order was entered in the underlying custody matter on June 27, 2013. Mother filed a responsive pleading on September 20, 2013, opposing the [Petition] to Transfer to Montgomery County and requesting that the matter be transferred to Chester County to which county Mother reportedly moved in late May, 2013.

(Trial Court Opinion, filed March 27, 2014, at 1-4) (footnotes and citations to the record omitted). The court conducted a hearing on January 15, 2014, on Father's petition. The court granted Father's petition on February 11, 2014, and transferred the custody action to Montgomery County. On March 11, 2014, Mother filed a timely notice of appeal, and a voluntary concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Mother raises the following issues for our review:

DID THE [TRIAL] COURT ABUSE ITS DISCRETION BY REFUSING TO TRANSFER THE ACTION TO CHESTER COUNTY, THE CHILD'S HOME COUNTY UNDER [PA.R.C.P.] RULE 1915.2 (A)(1)?

DID THE [TRIAL] COURT ABUSE ITS DISCRETION IN MISAPPLYING THE BENCHMARK FOR EVIDENCE UNDER [PA.R.C.P.] RULE 1915.2(A)(2), THEREBY IGNORING THE CHILD'S SIGNIFICANT CONNECTIONS TO THE CHILD'S HOME COUNTY?

(Mother's Brief at 7).

In her issues combined, Mother argues the custody matter should not

- 4 -

have been transferred to Montgomery County because Chester County has been the child's home county since May 15, 2013. Mother contends the court erred when it used the date Father filed his petition to transfer venue, rather than the date of the hearing on Father's petition, to determine the child's home county and to examine her significant connections with Montgomery County. Mother alleges the court refused to consider that the child had been living with Mother and Mother's fiancé in Chester County for approximately eight (8) months by the time of the hearing on Father's petition. Mother claims the court also ignored that Chester County is where the child lives seventy-four (74) percent of the time, goes to school and the doctor, and spends time with family and friends. Mother maintains Montgomery County has not ever been the child's home county, and the court's decision to transfer the custody matter to Montgomery County was impermissible under Pa.R.C.P. 1915.2. Mother concludes this Court should reverse and remand for the case to be transferred to Chester County, or, in the alternative, remand for the trial court to consider the child's current circumstances and determine whether she has significant connections to Chester County. We disagree.

Our review of this case implicates Rule 1915.2 of the Pennsylvania Rules of Civil Procedure, which provides in relevant part:

**Rule 1915.2.  Venue**

(a)  An action may be brought in any county

(1)(i) which is the home county of the child at the time of commencement of the proceeding, or

(ii) which had been the child's home county within six months before commencement of the proceeding and the child is absent from the county but a parent or person acting as parent continues to live in the county; or

(2) when the court of another county does not have venue under subdivision (1), and the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with the county other than mere physical presence and there is available within the county substantial evidence concerning the child's, protection, training and personal relationships[.]

\* \* \*

(c) The court at any time may transfer an action to the appropriate court of any other county where the action could originally have been brought or could be brought if it determines that it is an inconvenient forum under the circumstances and the court of another county is the more appropriate forum. …

\* \* \*

**EXPLANATORY COMMENT—2008**
Subdivision (a) of Rule 1915.2 incorporates the categories of jurisdiction for initial custody determinations and temporary emergency proceedings in the Uniform Child Custody Jurisdiction Act [("UCCJEA")] at 23 Pa.C.S.A. §§ 5421 and 5424 as the venue provisions for these rules, restating them in rule form without change in substance. Subdivision (a) follows the policy of § 5471 of the [UCCJEA], which provides that the provisions of the act "allocating jurisdiction and functions between and among courts of different states shall also allocate jurisdiction and functions between and among courts of common pleas of this Commonwealth."

Pa.R.C.P. 1915.2(a)(1)-(2), (c), and explanatory comment. Rule 1915.1

defines "home county" as:

> [T]he county in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, or in an institution, for at least six consecutive months…. A period of temporary absence of the child from the physical custody of the parent, institution, or person acting as parent shall not affect the six-month or other period[.]

Pa.R.C.P. 1915.1.

Similarly, Section 5421 of the UCCJEA provides:

### § 5421. Initial child custody jurisdiction

**(a) General rule.**—Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

> (1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

> (2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:

> > (i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and

> (ii) substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships[.]

23 Pa.C.S.A. § 5421(a)(1)-(2).  Section 5402 of the UCCJEA defines "Home state" as:

> The state in which a child lived with a parent or a person acting as a parent **for at least six consecutive months immediately before the commencement of a child custody proceeding**. … A period of temporary absence of any of the mentioned persons is part of the period.

23 Pa.C.S.A. § 5402 (emphasis added).  Moreover, Section 5471 of the UCCJEA provides for intrastate transfers as follows:

> **§ 5471.  Intrastate application**
>
> The provisions of this chapter allocating jurisdiction and functions between and among courts of different states shall also allocate jurisdiction and functions between and among the courts of common pleas of this Commonwealth.

23 Pa.C.S.A. § 5471.  ***See also Moffitt v. Moffitt***, 514 A.2d 184, 186 (Pa.Super. 1986) (stating: "The Pennsylvania version of the Act also includes a provision which allocates jurisdiction between and among courts of common pleas in the same manner in which the Act itself confers jurisdiction between and among courts of different states, 42 Pa.C.S.A. § [5471]").  Therefore, "home state" under the UCCJEA can be read as "home county." ***Weingartner v. Weingartner***, 40 Pa. D. & C.4th 564, 567 (Pa.Com.Pl. 1995).

Additionally, Section 5402 also defines "Commencement" as "[t]he

**filing of the first pleading** in a proceeding." 23 Pa.C.S.A. § 5402 (emphasis added). Thus, "the operative event for the purpose of computing the six-month period under [§ 5421(a)] is 'the proceeding' initiated by the party urging an exercise of jurisdiction…." *Zellat v. Zellat*, 506 A.2d 946, 949 (Pa.Super. 1986). *See R.M. v. J.S.*, 20 A.3d 496 (Pa.Super. 2011) (determining child's home state using date mother filed custody complaint).[1]

Our standard of review for decisions regarding application of the these jurisdictional criteria is as follows:

> A court's decision to exercise or decline jurisdiction…is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of discretion. Under Pennsylvania law an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.

*Wagner v. Wagner*, 887 A.2d 282, 285 (Pa.Super. 2005) (internal citations omitted).

Instantly, the trial court addressed Mother's claims as follows:

_____

[1] We must not confuse the present matter with this Court's decision in *C.R.F. v. S.E.F.*, 45 A.3d 441, 442 (Pa.Super. 2012), which held, "where the evidentiary proceeding commences on or after the effective date of the [new Child Custody Act], the provisions of the [new Child Custody Act] apply even if the request or petition was filed prior to the effective date." Here, we are dealing with a jurisdictional issue that involves Rule 1915.2, which tracks the venue rules of UCCJEA, rather than the actual merits of the custody dispute under the new Child Custody Act.

The exact date of Mother's move to Chester County is unknown, but if settlement occurred on May 16, 2013, Mother's move would likely have occurred at the end of May, 2013. Therefore, she would have been living in Chester County for only slightly more than two (2) months as of August 9, 2013, which does not satisfy the time period for "home county" under Rule 1915.2(a)(1).

Mother asserts that "home county" is determined as of the date of the court proceeding…whereby Mother argues that Chester County is "presently" [the child's] home county. However, case law shows that the filing date, not the hearing date, is determinative for establishing jurisdiction/venue. …

\*     \*     \*

Since the child lived in Montgomery County only for a few months and lived with Mother in Philadelphia County for several years until two and one-half months prior to the filing of the Motion to Transfer Venue, neither Montgomery County nor Chester County met the definition of home county as of August 9, 2013. Hence, neither county satisfies the requirements for venue under subdivision (a)(1) of Rule 1915.2.

\*     \*     \*

The question then arises as to the definition of the phrases, "significant connection," and "substantial evidence," [under Pa.R.C.P. 1915.2(a)(2),] for which we turn to case law. In **Rennie v. Rosenthal**, 995 A.2d 1217 (Pa.Super. 2010), the court discussed the meaning of "significant connection" in connection with a Petition for Primary Custody filed in Philadelphia concerning a child who had been living in Minnesota for five years. Custody proceedings had occurred in Philadelphia both before and after the child and the child's mother moved to Minnesota and the issue before the court was whether Philadelphia retained jurisdiction. …

\*     \*     \*

Quoting from Merriam Webster's Collegiate Dictionary as to the definitions of "significant" and "connection," the court in **Rennie** concluded that "the plain and ordinary meaning of the phrase 'significant connection,'" was that "the child and at least one parent have an important or meaningful relationship to the Commonwealth." **Id.** at 1221-1222.

\* \* \*

In **Rennie**, the child spent three periods of 2-3 consecutive weeks of custody with father each year, and spent time with grandparents, who took her on vacation, and with other family members and continued to have friendships in Philadelphia. **Id.** at 1222. The child also had connections to her step-mother and step-sisters in Philadelphia. **Id.** **Rennie** found that these facts, which are not as strong as the facts in the within case, were sufficient to find "sufficient contacts" of the child in Pennsylvania.

In the instant matter, beginning on September 24, 2010, Father has had custody of the child every weekend plus one weekday overnight for one and [a half] years, then following a seven month period of restricted time, had alternating weekends and one weekday night. Then, since September, 2012, Father has had custody on alternating weekends and one weekday overnight on alternating weeks, as well as vacation and holiday time. The child has numerous relatives, including children close to her age, as well as friends in Montgomery County, as noted above. The close relationship between the child and paternal grandparents, in particular, is evidenced by their having provided supervision for Father's periods of supervised partial custody, periods of partial custody continue in their home, and they continue to take her to services every Sunday when Father has custody. Even cousin Alexa and Aunt Carol provided occasional child care during Father's strict supervised partial custody.

Mother herself testified about Father, "I know that [the child] loves her dad, and so I know that he's made some good attributes towards for her to love him the way she does. So, I would never want to take that away from her."

- 11 -

Hence, it can be concluded that under criteria set in **Rennie**, Father and the child have significant connections to Montgomery County.

What must then be explored is whether, within the county, there is substantial evidence concerning the child's protection, training and personal relationships.

During the prior custody hearings, the vast majority of evidence concerning the child pertained to her time with Father in Montgomery County—how she was cared for by Father and his family members, and relationships with family members and friends, as summarized above. While the child will not be attending school in Montgomery County, ample evidence is available as to Father's parenting and what he does to enhance the child's educational and cultural environment in Montgomery County.

In addition, the child support matter has been transferred to Montgomery County. Anecdotally, this court notes that, on occasion, evidence concerning child support matters [is] relevant to custody issues and vice versa. Hence, proceedings concerning the child's financial welfare will occur in Montgomery County as a result of the support litigation which will occur there.

Thus, as of August [9] 2013, the child had a significant connection only with Montgomery County (as opposed to Chester County) and substantial evidence pertaining to the child's care was present only in Montgomery County. The benchmark for significant connection and substantial evidence, like the benchmark for jurisdiction, is the date of commencement of the action. The Superior Court stated: "[W]e note that jurisdiction is determined at the time the action is commenced…. Though it is clear from the record that appellant and the children have settled into life in Pennsylvania since moving, and therefore have since developed a 'significant' connection to the Commonwealth, that is 'of no moment.' It must be determined rather, whether, at the time wife commenced this action in Pennsylvania," there was a significant connection with Pennsylvania. **Lucas v. Lucas**, 882 A.2d 523, 528 (Pa.Super. 2005) (citations omitted).

\*　　\*　　\*

It must also be noted that the evidence in this custody litigation has focused on Father and, in all likelihood, will continue to do so in the future. Father has never filed for, nor requested primary physical custody of the child and the focus, therefore, has never been on Mother's parenting attributes, nor on the child's circumstances with Mother. While the child will, presumably, develop friendships in Chester County as time progresses, and will attend school there, there are no family members in Chester County and the sole reason for the move to the county was Mother's [fiancé's] purchase of a home which enabled him to be closer to his work in the state of Delaware.

Hence, the evidence shows that the criteria in Rule 1915.2 (a)(2) pertaining to venue have been satisfied in Montgomery County.

\*　　\*　　\*

Since subdivision (2) of Rule 1915.2(a) applies, subsection (c) allows a transfer from Philadelphia County, to Montgomery County where the action "could originally have been brought" and/or "could be brought" and is an appropriate forum: "(c) The court at any time may transfer an action to the appropriate court of any other county where the action could originally have been brought or could be brought if it determines that it is an inconvenient forum under the circumstances and the court of another county is the more appropriate forum." Thus, this court of Philadelphia County properly transferred the matter to Montgomery County since the custody action could have been brought in Montgomery County on August 9, 2013, as discussed above, when Philadelphia County no longer qualified as the home county.

\*　　\*　　\*

Mother's current county of residence, Chester County, did not meet the requirements of a home county as of the date Father filed his Motion to Transfer Venue and there was neither a significant connection with Chester County,

nor substantial evidence concerning the child in Chester County as of that date. On the other hand, Father and the child had a significant connection with Montgomery County as of August, 2013, where there is available substantial evidence concerning the child's protection, training and personal relationships. Hence, the transfer of venue to Montgomery County was appropriate under Pa.R.[C].P. 1915.2.

(Trial Court Opinion at 5-12) (footnotes and citations to the record omitted).

We agree. The record supports the court's decision when made, and we see no reason to disturb it. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2014