**Michelle RENNIE, Appellant**

v.

**Leonard D. ROSENTHOL, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 26, 2009.

Filed May 17, 2010.

Reargument Denied July 8, 2010.

Margaret Klaw, Philadelphia, for appellant.

Gary Mezzy, Jenkintown, for appellee.

BEFORE: MUSMANNO, KELLY, JJ., and McEWEN, P.J.E.

OPINION BY MUSMANNO, J.:

¶ 1 Michelle Rennie ("Mother"), appeals from the Order entered in the Philadelphia County Court of Common Pleas on April 9, 2009, exercising jurisdiction in a custody matter with Leonard D. Rosenthal ("Father"), regarding the parties' adopted daughter ("Child"). We affirm.

¶ 2 The trial court aptly summarized the relevant facts as follows:

[Mother and Father were] married in California in August of 1996. [They] moved to Pennsylvania in February of 1997. Child [was born on September 8, 1997, and] was adopted in April of 1998. [Mother and Father] separated in September of 1998. A Custody Provision was entered on October 1, 1998[,] in Philadelphia Family Court in a Protection from Abuse Order. An amended Custody Agreement was entered in Philadelphia Family Court on July 29, 1999. A Mediated Amended Custody Agreement was entered in Philadelphia Family Court on February 2, 2000. An Agreed Stipulation to the Agreed Custody Order was entered in Philadelphia Family Court on February 8, 2002. On September 18, 2002 by Agreement, the Custody Order of July 29, 1999[,] was amended by the Philadelphia Family Court.

On January 7, 2003[,] an extensive multi-paged Custody Arrangement Agreement was entered into by and between the parties providing that the above stipulation "(12.) supersedes all prior custody orders and including father's petition to prevent removal from the jurisdiction and all petitions for contempt [he] may have filed against mother. (13.) The parties agree to have this stipulation entered as an order of the court and to be legally bound thereby. It is their intention that this Court (Philadelphia) will retain jurisdiction in this

matter." All parties lived in [the] Philadelphia area until approximately early 2003. In early 2003, [ ] Mother and [ ] Child moved to Minnesota. On July 26, 2004[,] the Philadelphia Family Court modified the existing Custody Order, by Agreement. On April 24, 2007[,] the Philadelphia Family Court entered an extensive Agreement by the parties modifying the existing Custody Order. [The new Agreement was silent as to the jurisdiction of any future proceedings.]

Trial Court Opinion, 6/26/09, at 1–2.

¶ 3 On May 1, 2008, Father filed a Petition seeking modification of the April 24, 2007 order, requesting a transfer of primary custody of Child to him in Pennsylvania, along with a Petition for contempt. The trial court consolidated the Petitions and scheduled a hearing for December 9, 2008.

¶ 4 On October 22, 2008, Mother filed a Motion to Relinquish Jurisdiction to Minnesota, based on 23 Pa.C.S.A. § 5422(a)(1) of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). Father filed a timely response to Mother's Motion. On November 25, 2008, the trial court heard oral argument on Mother's Motion and continued the matter to December 9, 2008, for the contempt hearing. Following that hearing, on December 10, 2008, the trial court entered an Order finding Mother in contempt, and ruling that it would retain jurisdiction over the custody modification proceeding.

¶ 5 Mother filed a Motion for reconsideration on January 7, 2009, requesting that the trial court reconsider its ruling on the jurisdiction issue based on Mother's contention that the trial court's decision was directly at odds with controlling law. On January 9, 2009, the trial court expressly granted reconsideration and scheduled oral argument on Mother's Motion for reconsideration. At the conclusion of argument on February 9, 2009, the trial court took the jurisdictional issue under advisement and directed counsel to either submit stipulated facts or to advise the court that it should schedule a hearing concerning section 5422(a)(1) of the UCCJEA. Subsequently, a hearing on the jurisdictional issue occurred on April 6, 2009. On April 9, 2009, the trial court issued an order denying Mother's Motion to relinquish jurisdiction to Minnesota, but certified the matter for immediate appeal provided it met the applicable statutory provisions.

¶ 6 On April 20, 2009, Mother filed a Petition for Permission to Appeal to this Court. On June 1, 2009, this Court granted the Petition and permitted the instant appeal. Mother filed a Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement, after which the trial court issued its Rule 1925(a) Opinion and a supplemental Opinion.

¶ 7 Mother raises the following question for our review:

Should the trial court relinquish jurisdiction over a custody modification proceeding, based on 23 Pa.C.S.A. § 5422(a)(1) of the [UCCJEA], where the child and one parent have lived in another state for six years, have no significant connection with this Commonwealth, and substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships?

Mother's Brief at 4.

¶ 8 Our standard of review on Mother's jurisdictional issue is as follows:

A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the

law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. *Wagner v. Wagner,* 887 A.2d 282, 285 (Pa.Super.2005) (citation omitted).

¶ 9 On appeal, Mother asserts that the trial court abused its discretion when it refused to relinquish jurisdiction under section 5442(a)(1) of the UCCJEA in the matter *sub judice.* Mother's Brief at 9.

¶ 10 The UCCJEA, 23 Pa.C.S.A. § 5401, *et seq.,* was promulgated by the National Conference of Commissioners on Uniform State Laws in 1997 and became effective in Pennsylvania in 2004. The UCCJEA replaced the Uniform Child Custody Jurisdiction Act ("UCCJA") as a way to rectify inconsistent case law and revise custody jurisdiction in light of federal enactments. One of the main purposes of the UCCJEA was to clarify the exclusive, continuing jurisdiction for the state that entered the child custody decree. *See* 23 Pa.C.S.A. § 5422, cmt.; *see also Bouzos–Reilly v. Reilly,* 980 A.2d 643, 645 (Pa.Super.2009). Section 5422 of the UCCJEA sets forth the following test to determine whether a trial court retains "exclusive, continuing jurisdiction" over its initial child custody order:

(a) **GENERAL RULE.**—Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:

(1) a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships; or

(2) a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.

(b) **MODIFICATION WHERE COURT DOES NOT HAVE EXCLUSIVE, CONTINUING JURISDICTION.**—A court of this Commonwealth which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under section 5421.

23 Pa.C.S.A. § 5422.

¶ 11 Under the plain meaning of section 5422(a)(1),[1] a court that makes an initial

---

1. Our Supreme Court has stated the following regarding statutory interpretation:

The object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. § 1921(a); *In re Canvass of Absentee Ballots of November 4, 2003 General Election,* 577 Pa. 231, 843 A.2d 1223, 1230 (2004). In interpreting statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage....", 1 Pa.C.S. § 1903(a), and, if possible, statutes must be construed so that every provision is given effect. 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from all ambiguity, their

custody determination retains exclusive, continuing jurisdiction until neither the child nor the child and one parent or a person acting as a parent have a significant connection with Pennsylvania *and* substantial evidence concerning the child's care, protection, training, and personal relationships is no longer available here. The use of the term "and" requires that exclusive jurisdiction continues in Pennsylvania until both a significant connection to Pennsylvania and the requisite substantial evidence are lacking. In other words, Pennsylvania will retain jurisdiction as long as a significant connection with Pennsylvania exists *or* substantial evidence is present.[2]

¶ 12 Mother initially contends that she and Child do not have a significant connection to Pennsylvania because they have lived in another state for six years. Moth-

er's Brief at 10. Mother asserts that she only lived in Pennsylvania for a short period of time and that Child's connections to Pennsylvania are minimal. *Id.* at 10–11.

■ ¶ 13 We note that the phrase "significant connection" is not defined in the UCCJEA.[3] "Significant" is defined as "having meaning" or "important." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1091 (10th ed. 1997). "Connection" is defined as "the state of being connected," or "a relation of personal intimacy." *Id.* at 245. Therefore, pursuant to the plain and ordinary meaning of the phrase "significant connection," exclusive, continuing jurisdiction is retained under section 5422(a)(1) as long as the child and at least one parent have an important or meaningful relationship to the Commonwealth.[4] Accordingly, we must look at the nature

---

plain language is generally the best indication of legislative intent. *White Deer Tp. v. Napp,* 985 A.2d 745, 754 (Pa.2009).

2. We note that the Supreme Court of Pennsylvania has not interpreted this statute. However, our interpretation of the statute's plain, unambiguous language comports with its interpretation in other jurisdictions. *See, e.g., West v. West,* 364 Ark. 73, 216 S.W.3d 557 (2005); *In re Forlenza,* 140 S.W.3d 373, 379 (Tex.2004); *Benson v. Benson,* 667 N.W.2d 582, 585 (N.D.2003); *White v. Harrison–White,* 280 Mich.App. 383, 760 N.W.2d 691, 696 (2008); *Fish v. Fish,* 266 Ga.App. 224, 596 S.E.2d 654, 656 (2004); *Ruth v. Ruth,* 32 Kan.App.2d 416, 83 P.3d 1248, 1254 (2004).

3. Multiple jurisdictions have looked at the language of "significant connection" and have come to different interpretations. *See White,* 760 N.W.2d at 696–98 (detailing the narrow and broad interpretations of "significant connection" in various jurisdictions). The *White* Court noted that a majority of jurisdictions have found a "significant connection" where "one parent resides in the state and exercises at least some parenting time in the state." *Id.* at 697.

4. Under the prior iteration of the statute under the UCCJA, *see* 23 Pa.C.S.A. § 5344, our Supreme Court held that the significant connection test is to be flexible to cover the variety of factual situations. *See Dincer v. Dincer,* 549 Pa. 309, 701 A.2d 210, 215 (1997). The Supreme Court stated that the purpose of this language was to limit rather than propagate jurisdiction and indicated that maximum and not a minimum contact with the Commonwealth was necessary to keep jurisdiction. *See id.* We note that, under section 5344, as opposed the present statute, the court had to consider the best interests of the child in making the jurisdictional finding. Under section 5422 of the UCCJEA, the "best interest" language was eliminated as it was unnecessary in determining the jurisdictional issue. *See* Title 23, Chapter 54, Uniform Law Comments (stating that the "best interest" language was eliminated in the UCCJEA to prevent these considerations in determining the proper jurisdiction). However, as discussed *infra,* even if we apply the *Dincer* reasoning to these facts, we would still conclude that Pennsylvania has sufficient contacts for a significant connection. *See, e.g., Favacchia v. Favacchia,* 769 A.2d 531, 539–40 (Pa.Super.2001).

and quality of the child's contacts with the parent living in the Commonwealth.

¶ 14 We find Mother's contention that Child had no significant contact with the Commonwealth belied by the record. Child was brought to Pennsylvania and lived here for a period of approximately five years following her adoption. Following the divorce, the parties continued to live in Pennsylvania and pursuant to a custody agreement, agreed to submit to the jurisdiction of Pennsylvania.[5] After Mother moved to Minnesota, Father continued to reside in a suburb of Philadelphia. Additionally, pursuant to the most recent agreement between Mother and Father, Father is granted specific periods of custody for 2–3 consecutive weeks during Child's summer vacation, her winter vacation from school, and for Passover every other year. Order, 4/24/07, at 1–2. Child also spent time with her grandparents in Pennsylvania and the grandparents have taken Child on vacations to Florida. *See* Trial Court Opinion, 6/26/09, at 7, 8; N.T., 4/6/09, at 37–38; N.T., 12/9/08, at 163. Child additionally visits with other family in Pennsylvania and continues to have friendships in the Philadelphia area. *See* Trial Court Opinion, 6/26/09, at 7, 10–11; N.T., 4/6/09, at 36–37, 39–40, 54–55; N.T., 12/9/08, at 54, 157–58. Furthermore, Child has a strong relationship with Father, her grandparents and her step-sisters, a product of Father's new marriage. *See* Trial Court Opinion, 6/26/09, at 7, 10–11 (stating that Father and Child's other immediate family maintain a close personal relationship with Child); *see also* Mother's Brief at 10–11 (stating that Child has connections to her step-mother and step-sisters). Based upon the foregoing evidence, Child and Father have a significant connection to Pennsylvania.[6]

¶ 15 Moreover, Mother's allegation that because she did not have a connection to Pennsylvania, there is no significant connection is without merit. As indicated in clear language in the statute, a "significant connection" will be found where one parent resides and exercises parenting time in the state and maintains a meaningful relationship with the child. The statute does not specify that courts must determine that the parent with primary custody of a child has a significant connection with the state to retain jurisdiction. Here, as noted above, the evidence established that Father lives in the Philadelphia area and he and Child have a significant connection to Pennsylvania.

¶ 16 Mother also asserts that the reasoning in *Billhime v. Billhime,* 952 A.2d 1174 (Pa.Super.2008), supports her argument that jurisdiction should have been relinquished to Minnesota. In that case, twin boys born in Orlando, Florida, relocated to Pennsylvania when they were five years old. 952 A.2d at 1175. The parents separated in 2004, at which time the Court of Common Pleas of Montour County awarded mother primary physical custody of the

---

**5.** As noted above, the last custody agreement entered as an Order in 2007 is silent as to jurisdiction.

**6.** We note that courts in other jurisdictions commonly consider visitation within the state as evidence of a significant connection. *See, e.g., In re Forlenza,* 140 S.W.3d at 377; *Fish,* 596 S.E.2d at 656; *Ruth,* 83 P.3d at 1254. In addition, evidence of a relationship between the child's relatives and friends in a subject state and child evidences a significant connec-

tion. *See Thomas v. Avant,* 370 Ark. 377, 260 S.W.3d 266, 271 (2007) (concluding that child had significant connection to state where she maintained relationships with her father's family and friends); *In the Matter of M.B. II v. M.B.,* 195 Misc.2d 192, 756 N.Y.S.2d 710, 712–13 (N.Y.Fam.Ct.2002) (determining that evidence of a relationship between a child and his/her relatives shows a significant connection to the state).

children. Mother relocated to Orlando, Florida with the children one year later. *Id.* Mother thereafter filed a motion requesting that Pennsylvania relinquish jurisdiction to Florida. *Id.* The trial court allowed jurisdiction to remain in Pennsylvania, relying almost exclusively on the father's significant connection with the Commonwealth. *Id.* at 1176. This Court reversed the trial court, finding that the focus should be on the children's significant connection to Pennsylvania and not solely the father's connection. *Id.* Specifically, the Court found that the majority of evidence presented showed father's connection to Pennsylvania and that the evidence did not detail whether the children had a significant connection with the Commonwealth other than various visits every year. *Id.* at 1177. The Court further found that there was not substantial evidence relating to the children's welfare in Pennsylvania. *Id.* Accordingly, the Court concluded that section 5422(a) was not met; thus, Pennsylvania did not have continuing jurisdiction. *Id.*[7]

¶ 17 Contrary to Mother's allegations, we conclude that the facts of this case are inapposite to *Billhime* as Child has significant contacts with Pennsylvania. Indeed, here, evidence was presented that Child visited the Commonwealth on numerous occasions every year **and** has significant close relationships in the Commonwealth with Father, her grandparents, her step-sisters, and friends. Thus, unlike *Billhime,* there is sufficient evidence establishing a connection between Child and the Commonwealth and Mother's reliance on *Billhime* is unavailing.

¶ 18 Because we have concluded that there is a significant connection to Pennsylvania, Mother has failed to satisfy the requirements of section 5422(a)(1). Indeed, it is unnecessary to consider whether there is substantial evidence available in Pennsylvania concerning the child's care, protection, training, and personal relationships as both prongs · under section 5422(a)(1) must be lacking in order to relinquish jurisdiction.[8] As such, we reject Mother's arguments on appeal, and conclude that the trial court did not abuse its discretion in refusing Mother's request to relinquish jurisdiction of the instant custody matter.

¶ 19 Order affirmed.

---

**7.** We note that in reaching its conclusion, the *Billhime* Court indicated that to determine whether a child had a "significant connection" with Pennsylvania, courts must find that substantial evidence regarding a child's care, protection, training and personal relationships is available here. *Billhime,* 952 A.2d at 1176 (stating that "[f]or the child, the lack of a continuing 'significant connection' with the Commonwealth is established if the court finds that substantial evidence concerning the child's 'care, protection, training and personal relationships' is no longer available here."). The *Billhime* Court's interpretation of the statute regarding a child's connection to a state seems to incorrectly take into account the second prong of section 5422(a)(1), substantial evidence, to prove the first prong, significant connection. However, despite this interpretation, the *Billhime* Court analyzed each prong and concluded that the test under section 5422(a)(1) had been met and that continuing jurisdiction was not available in Pennsylvania.

**8.** We note that section 5422(a)(2) is inapplicable here as Father resides in Pennsylvania.