J-S05032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.C., | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | Appellee | |
| | v. | |
| A.M., | | |
| | Appellant | No. 1176 MDA 2015 |

Appeal from the Order Entered June 10, 2015
in the Court of Common Pleas of Lancaster County
Civil Division at No.: CI-11-01201

BEFORE:  BENDER, P.J.E., SHOGAN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED MARCH 23, 2016**

Appellant, A.M. (Mother), appeals from the order of the Court of Common Pleas of Lancaster County, entered June 10, 2015, that denied her request to transfer jurisdiction over this custody action from Lancaster County, Pennsylvania to Hudson County, New Jersey.[1]  We affirm on the basis of the trial court's opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] This Court, *per curiam*, questioned whether the order denying Mother's request to transfer jurisdiction was final and appealable, or subject to quashal, citing **G.B. v. M.M.B.**, 670 A.2d 714, 717 (Pa. Super. 1996). (**See** Order, 8/03/15).  Eventually, the Court referred the issue to this merits panel. (**See** Order, 8/24/15).  We grant review.  **See In re H.S.W.C.-B**, 836 A.2d 908, 911 (Pa. 2003) ("An order granting or denying a status change, as well as an order terminating or preserving parental rights, shall be deemed final when entered.") (citation omitted).

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them at length here.

For the convenience of the reader, we note briefly that in October of 2010, Mother relocated with G.A.C. (Child) to Jersey City, New Jersey from Lancaster, Pennsylvania.[2] Appellee, S.C. (Father), remained in the Lancaster area. Mother's parents also live in the Lancaster area. She has other family in the New York City area. Child returns to Lancaster frequently to visit with his father and other family, including his maternal grandparents.

In August of 2014, Mother initiated a custody action in Hudson County, New Jersey. The court in Hudson County refused to assume jurisdiction. (**See** Trial Court Opinion, 8/07/15, at 11 n.4). Mother then filed the instant action, seeking modification of the custody order in Lancaster County.

The parties could not reach agreement through negotiation. They submitted a joint statement of stipulated facts to the court, and each party submitted a memorandum of law, plus briefs. On June 10, 2015, the trial

---

[2] Mother apparently did not provide notice or information of the relocation to Father. (**See** Trial Court Opinion, 8/07/15, at 11 n.4).

- 2 -

court entered an order denying Mother's request. This timely appeal followed, on July 9, 2015.[3]

Mother raises one question on appeal:

A. Whether the [trial] court erred in finding that the Commonwealth of Pennsylvania has continuing, exclusive jurisdiction over the instant matter under the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act, 23 Pa.C.S.A. §5421, *et seq.* (2015)?

(Mother's Brief at 4).

Mother argues chiefly that she and Child have established significant contacts in the Jersey City area, and the trial court should have relinquished jurisdiction pursuant to sections 5422, 5423, and 5427 of the Uniform Child Custody Jurisdiction and Enforcement Act.[4] (**See** Mother's Brief, at 7-15). We disagree.

Our scope and standard of review is well-settled:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately,

---

[3] Mother also filed a concise statement of errors on the same date. The trial court filed its opinion on August 7, 2015. **See** Pa.R.A.P. 1925(a), (b), **see also** Pa.R.A.P. 1925(a)(2)(i).

[4] **See** the Uniform Child Custody Jurisdiction and Enforcement Act, 23 Pa.C.S.A. §§ 5401-5482 (UCCJEA).

the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012).

We have stated,

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting

*Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (quoting *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)).

We must accept the trial court's findings that are supported by competent evidence of record, and we defer to the trial court on issues of credibility and weight of the evidence. If competent evidence supports the trial court's findings, we will affirm even if the record could also support the

opposite result. ***See In re M.G.***, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted).

Additionally,

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

***S.M. v. J.M.***, 811 A.2d 621, 623 (Pa. Super. 2002) (quoting ***Robinson v. Robinson***, 645 A.2d 836, 838 (Pa. 1994)).

"[A] trial court's decision that it possesses subject matter jurisdiction under section 5422 is purely a question of law. As such, our standard of review is *de novo* and our scope of review is plenary." ***S.K.C. v. J.L.C.***, 94 A.3d 402, 408 (Pa. Super. 2014).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that there is no merit to the issue Mother has raised on appeal. The trial court opinion properly disposes of the question presented. (***See*** Trial Ct. Op., at 5, 9-11) (finding: (1) Father and Child maintain a significant connection in the Commonwealth, warranting the maintenance of exclusive and continuing jurisdiction in Pennsylvania under section 5422 of the UCCJEA; (2) Father lives and works in Pennsylvania; (3) Child visits Pennsylvania frequently, maintaining relationships with his Father, Father's

friends, Child's maternal grandparents, his own friends, and extended family)).  Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/23/2016

ORIGINAL

ENTERED AND FILED

AUG - 7 2015

12:00 PM

PROTHONOTARY OFFICE
LANCASTER, PA

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - CUSTODY

S███ C███
      Plaintiff                           :
                                          :
      v.                                  :        No. CI-11-01201
                                          :
A███ M█████████,                          :
      Defendant                           :

## OPINION

This Opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rule of Appellate Procedure. On August 22, 2014, Defendant-Mother A███ M█████ filed a Petition for Modification. On February 3, 2015, the parties appeared before the Court for a settlement conference. At the conference, the parties agreed the only issue at dispute is whether Pennsylvania retains jurisdiction over the custodial action. The parties further agreed that neither the facts nor the custodial schedule were in dispute and, in lieu of a hearing, made a joint request that the matter be resolved upon the filing of briefs and a stipulated record. On March 25, 2015, following a period of negotiations between the parties, the Court entered an Order setting forth a briefing schedule. On April 24, 2015, the parties filed a joint statement of undisputed facts and Defendant filed a memorandum in support of Pennsylvania relinquishing jurisdiction. Plaintiff-Father Samuel Cruz filed a memorandum in opposition thereto on May 20, 2015. On June 10, 2015, the Court entered an Order denying Defendant's request that Pennsylvania relinquish jurisdiction. On July 9, 2015, Defendant filed an appeal of this Court's June 10, 2015 Order by filing a Children's Fast Track Appeal directly to the Superior Court of Pennsylvania. This Opinion is written in support of the Order of Court dated June 10, 2015, finding that Pennsylvania maintains jurisdiction over the custodial action.

## I. Factual and Procedural History

Plaintiff-Father S████ C████ ("Father") and Defendant-Mother A████ M████ ("Mother") are the parents of minor child G████ A. C████ (D.O.B. 08/17/2007). Father filed a Complaint for custody on February 11, 2011.

On September 11, 2011, following a custody hearing, the Court awarded shared legal custody and primary physical custody with Mother. In relevant part, the Court granted Father partial physical custody every other weekend from 6:00 p.m. Friday until 6:00 p.m. Sunday. The Order also granted Father one (1) week of custody during the months of June, July, and August. The Order directed Father and Mother to rotate the holidays of Christmas, Easter, Thanksgiving Day, Labor Day, Memorial Day, Independence Day, and New Year's Day.

On October 7, 2011, Father filed a Petition for Special Relief requesting that he exercise his periods of custody from Saturdays at 9:00 a.m. until Sundays at 6:00 p.m. The Court entered an Order on October 7, 2011, directing the same.

On August 21, 2014, Mother filed a Petition for Modification and Special Relief and presented in Family Business Court. Mother requested that Father undergo a psychological evaluation which the Court denied. In her petition, Mother also requested that the action be transferred to Jersey City, New Jersey. The Court directed the matter proceed to a custody conference.

On December 15, 2014, following a custody conference on November 6, 2014, where the parties agreed only to a custodial schedule, the Court entered an Order directing the parties to appear for a settlement conference on February 3, 2015. At the settlement conference, the parties agreed that the only issue at dispute was whether Pennsylvania retains jurisdiction over the custodial action. The parties agreed that the facts were not in dispute, that a hearing was

2

unnecessary, and that the matter may be resolved upon the filing of briefs and a stipulated record. Accordingly, the parties both requested to submit briefs and a joint statement of undisputed facts and avoid the need for a hearing.

On March 25, 2015, following a period of negotiations between the parties, the Court entered an Order codifying the parties' agreement. The Order indicated that the sole issue at dispute is whether Pennsylvania continues to maintain jurisdiction over the custodial action. The Order also set forth a briefing schedule that included, pursuant to the parties' agreement, a joint statement of stipulated facts.

On April 24, 2015, the parties filed a joint statement of undisputed facts and stipulated to the following factual record:

1. The parties are the biological parents of G████ A. C███, who was born on August 17, 2007.
2. The child was born at Women[] and Babies Hospital in Lancaster, Pennsylvania.
3. [Father] currently resides at 1101 Millersville Pike, Lancaster, PA 17603. He has resided in Lancaster, Pennsylvania since 2007.
4. [Father] instituted this action in 2011. On or around September 12, 2011, after a hearing in open court and testimony from both parties, this Honorable Court issued an Order granting primary physical custody of the child to [Mother] and partial physical custody to [Father].
5. [Mother] and child moved to New Jersey in 2010. In its September 2011 Order, this Honorable Court found that [Mother] did not relocate the child without providing notice and specific information concerning the relocation to [Father]. Among other findings[,] and although this Honorable Court allowed the move to New Jersey, this Honorable Court ordered [Mother] to retrieve the child in Lancaster County at the end of [Father's] custodial periods.
6. [Father] has exercised partial physical custody of the child every other weekend in Lancaster County, Pennsylvania pursuant to the September, 2011 Order. [Father has exercised] his custody rights to the [c]hild on a regular basis since September, 2011.
7. [Father] has been gainfully employed in Lancaster, Pennsylvania since he came to Pennsylvania in 2007.
8. The child's maternal grandparents, Osiris and Gladys M███████, reside in Lancaster County, Pennsylvania. [Mother's] maternal aunt, Lourdes, resides in Lancaster County. The child's maternal aunt, Amanda M███████, resides in

3

Lancaster County. The child also has two adult cousins who reside in the Commonwealth of Pennsylvania.

9. When the child spends the weekends in Lancaster County, Pennsylvania with [Father], he attends church services [at] Petra Fellowship with [Father]. The child's maternal grandparents attend said church as well. He also engages in other activities with [Father], including visiting with [Father's] friends, the movies, parks and cultural centers. He also spends time with [Father].

10. When in Lancaster County, Pennsylvania, the child enjoys playing with his 11-year-old friend Julian, who is the son of [Father's] friend, Nancy T██████.

11. The child enjoys spending time and bonding with [Father's] girlfriend, S███ W█████. They have gone skiing together, cook together, go [to] the park together, grocery shopping, etc. [Father] and Sarah have been dating for two years and intend to marry in the near future.

12. [Mother] and child maintained a domicile in Jersey City, New Jersey since their move in October, 2010.

13. The child attends Michael Conti Public School PS # 5 in Jersey City, New Jersey. The child is currently in the second grade. The child has many friends in his class and neighborhood.

14. The child participates in extracurricular activities in the Jersey City, New Jersey area, including soccer, summer bible camp and Taekwondo.

15. The child's long-standing pediatrician and dentist are also located in Jersey City, New Jersey. The child has been a patient for the last four (4) years of his pediatrician and dentist.

16. The child has constant and meaningful contact with [Mother's] large extended family who live in the New York City area.

17. [Mother's] employment is also located in and around the Jersey city area. [Mother] is employed by Mont Blanc Collection.

18. [Mother] relocated to the Jersey City, New Jersey area to pursue a promotion at her employer.

19. [Mother] and child spend substantial periods of time together in [and] around the Jersey City area doing activities, including but not limited to, going to park and playgrounds, going to movies, vesting attractions in the metropolitan New Jersey-New York area and spending time with family and friends. All these activities contribute to the parent-child bond.

20. [Mother] is active in the child's education.

(Joint Stip. Facts 2-5) (hereinafter J.S.).

Mother also filed a memorandum in support of Pennsylvania relinquishing jurisdiction on April 24, 2015. Father filed a memorandum in opposition thereto on May 20, 2015. On June 10, 2015, the Court entered an Order denying Defendant's request that Pennsylvania relinquish

4

jurisdiction. On July 9, 2015, Defendant filed a timely appeal of this Court's June 10, 2015 Order by filing a Children's Fast Track Appeal directly to the Superior Court of Pennsylvania.

Pursuant to Rule of Appellate Procedure 1925(a)(2)(i) Mother filed a concise statement of errors complained of on appeal. Mother presents a single issue for her appeal: "[w]hether the lower court erred in finding that the Commonwealth of Pennsylvania has continuing, exclusive jurisdiction over the instant matter under the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act, 23 Pa.C.S.A. § 5421, *et[] seq.* (2015)." (Pet'r's Concise Statement). For reasons more fully set forth below, this Court requests that the Superior Court of Pennsylvania affirm the Order of Court dated June 10, 2015.

## II. Discussion

Presently before this Court is Mother's appeal from this Court's Order dated June 10, 2015. Mother contends, in essence, that because the subject child resides primarily in New Jersey this Commonwealth is without exclusive and continuing jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, 23 Pa.C.S. § 5421, *et seq.* (2015) ("UCCJEA"). (*See* Def.'s Mem. 3-7). Father contends that because he resides and is employed in Pennsylvania, and because he continues to exercise periods of custody at his residence in Pennsylvania, he and the subject child maintain a significant connection with the Commonwealth such that it continues to have exclusive and continuing jurisdiction. (*See* Pl.'s Mem.). This Court finds that Father and the subject child maintain a significant connection with this Commonwealth such that it maintains exclusive and continuing jurisdiction of the underlying custodial action. This connection began upon the child's birth in 2007 and has remained from the inception of this action in 2011 through the present. Accordingly, this Court recommends that Mother's appeal be dismissed and this Court's Order dated June 10, 2015 be affirmed.

5

*A. Standard of Review*

In a child custody matter, the Superior Court's "scope is of the broadest type and . . . standard of review is abuse of discretion." *A.D. v. M.A.B.*, 989 A.2d 32, 35 (Pa. Super. 2010) (quoting *Collins v. Collins*, 897 A.2d 466, 471 (Pa. Super. 2006) (citation omitted)). In matters involving the trial court's determination of jurisdiction, the Superior Court's standard of review is as follows:

> A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.

*Rennie v. Rosenthol*, 995 A.2d 1217, 1220-21 (Pa. Super. 2010) (quoting *Wagner v. Wagner*, 887 A.2d 282, 285 (Pa. Super. 2005)).

In matters of child custody jurisdiction, section 5422 of the UCCJEA is controlling for a court of this Commonwealth that has properly assumed jurisdiction[1] to determine whether it maintains jurisdiction. *See S.K.C. v. J.L.C.*, 94 A.3d 402, 405-08 (Pa. Super. 2014); *Rennie*, 995 A.2d at 1220; *M.A.B.*, 989 A.2d at 36. In particular, section 5422(a) provides that a court that has properly made a child custody determination in which it assumed jurisdiction, maintains exclusive, continuing jurisdiction over the matter until:

> (1) a court of this Commonwealth or a court of another state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships; or

---

[1] The parties agreed that this Commonwealth properly assumed jurisdiction in the first instance and neither party asserts that emergency jurisdiction plays a role in the instant action. (*See* Pl.'s Mem.; Def.'s Mem. 2).

6

(2) a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.

23 Pa.C.S. § 5422(a)(1)-(2).

The Superior Court of Pennsylvania has examined whether a significant connection exists on several recent occasions. *See S.K.C.*, 94 A.3d at 413; *Rennie*, 995 A.2d at 1221-23; *M.A.B.*, 989 A.2d at 36-37; *Billhime v. Billhime*, 952 A.2d 1174, 1176-77 (Pa. Super. 2008). The Superior Court's interpretation of 23 Pa.C.S. § 5422(a)(1)-(2) is consistent: "jurisdiction is defeated where a significant connection with Pennsylvania no longer exists **and** substantial evidence relating to the child's care, protection, training, and personal relationships is no longer available within the Commonwealth." *S.K.C.*, 94 A.3d at 413 (emphasis in original). A plain reading of the statute, as evidenced by the Superior Court's point of emphasis, indicates that a significant connection and substantial evidence both must be absent from the Commonwealth for jurisdiction to be relinquished. *See id.* As discussed below, this Court finds that a significant connection with Pennsylvania exists with the child and Father and thus is dispositive of the instant matter.

*B. Significant Connection*

Father's exercise of substantial periods of custody in Pennsylvania paired with the child's relationships and activities here demonstrate that a significant connection exists with this Commonwealth. *See S.K.C.*, 94 A.3d at 413. A significant connection that warrants a court's continued exercise of exclusive and continuing jurisdiction exists where "the child and at least one parent have an important or meaningful relationship to the Commonwealth." *Rennie*, 995 A.2d at 1221. This analysis surrounds the "nature and quality of the child's contacts with the parent living in the Commonwealth." *Id.* at 1222. The following determinations by the Superior Court are instructive:

7

In *Rennie*, the Superior Court found that a significant connection existed between a parent, child, and Pennsylvania where the child and parent maintained several contacts with this Commonwealth. *Id.* at 1222. Specifically, the Superior Court noted the following: the child was adopted and resided in Pennsylvania for five (5) years, the child's father resided in Pennsylvania at the time of the action, the custody order granted father custodial time two (2) or three (3) weeks out of the summer and during the child's winter vacation totaling about one (1) month each year, the child spent time with her paternal grandparents in Pennsylvania, and the child visited other family members and friends in Pennsylvania during father's periods of custody. *Id.* This finding occurred despite the child residing primarily in Minnesota for the duration of six (6) years prior to the filing for a change in jurisdiction. *Id.* at 1221.

In *Billhime*, the Superior Court found that a significant connection did not exist where, despite a father's connection to Pennsylvania, the subject children had only minimal contact with this Commonwealth. *Billhime*, 952 A.2d 1176-77. Specifically, care for the subject children centered exclusively in Florida, the custodial order only provided for the children's visit to Pennsylvania a few times each year, and the parties were frequently unable to coordinate the children's travel between Pennsylvania and Florida.[2] *Id.* at 1175-77.

In *M.A.B.*, the Superior Court also found that a significant connection did not exist where the subject child had no contact with this Commonwealth. *M.A.B.*, 989 A.2d at 36-37. There, the subject child had not resided or traveled to Pennsylvania since the age of six (6) months, the

---

[2] Notably, the Superior Court later clarified "a key tenant of the *Billhime* decision." *S.K.C.*, 94 A.3d at 413. In *Billhime* the Superior Court stated "'the lack of a continuing significant connection with the Commonwealth is established if the court finds that substantial evidence concerning the child's care, protection, training and personal relationships is no longer available here.'" *Id.* (quoting *Billhime*, 952 A.2d at 1176) (internal punctuation omitted). The Superior Court later clarified, however, that regarding UCCJEA section 5422(a)(1), "the plain language of the statute provides that jurisdiction is defeated where a significant connection with Pennsylvania no longer exists **and** substantial evidence relating to the child's care, protection, training, and personal relationships is no longer present within the Commonwealth." *S.K.C.*, 94 A.3d at 413 (quoting *Rennie*, 995 A.2d at 1223 n.7) (emphasis in original).

8

father had no contact with the child, the child's mother resided in Michigan, and father did not contest Michigan's jurisdiction. *Id.* at 37.

Finally, and most recently, the Superior Court revisited whether a significant connection existed in *S.K.C.*, 94 A.3d at 411-14. In its review of the doctrine, the Superior Court reiterated that a "significant connection exists where one parent resides and exercises parenting time in the state and maintains a meaningful relationship with the child." *S.K.C.*, 94 A.3d at 412 (quoting *Rennie*, 995 A.2d at 1222) (punctuation omitted). There, the Superior Court found that the requisite connection existed where the parent exercised custody over the child in Pennsylvania on over twelve (12) occasions each year and for a total period in excess of three (3) months. *Id.* at 413. This occurred pursuant to a custodial order permitting partial custody to the Pennsylvania parent the first week of each month and on holidays. *Id.* at 405.

The frequency of Father's custodial periods in Pennsylvania and the nature of the child's contacts while here, demonstrate the significant connection Father and the child maintain with this Commonwealth. *See S.K.C.*, 94 A.3d at 413.

*C. Analysis*

Without question, Father shares a significant connection with Pennsylvania. *See S.K.C.*, 94 A.3d at 413. As agreed upon by the parties, Father presently resides in Pennsylvania and has resided here since at least 2007. (J.S. 2). Father is gainfully employed here and has maintained employment here since he began residing in Pennsylvania in 2007. (*Id.* at 3). Father exercises his periods of custody in Pennsylvania, attends church here, and has also invoked the courts of Pennsylvania in managing this custodial action since 2011. (*Id.* at 3-4). In all these ways Father maintains a significant connection with this Commonwealth.

9

The subject child also shares a significant connection with Pennsylvania as evidenced by the frequency and nature of his visits. *See S.K.C.*, 94 A.3d at 413. Minor child was born in Pennsylvania and lived here for several years thereafter. (J.S. 2-3). Since that time, and following the parties separation and Mother's relocation with the child to New Jersey, the child has continued to visit Pennsylvania pursuant to the September 2011 Order. (*Id.* at 3). Accordingly, the child spends time in Father's custody in Pennsylvania every other weekend for a majority of the year from Friday until Sunday, for three (3) non-consecutive weeks in three (3) separate months during the summer, and several holidays. This visitation equates to over twenty (20) separate visits to Pennsylvania each year. In total, the child resides in Pennsylvania for at least sixty (60) days each year or in excess of two (2) months out of the entire year.[3] The number and duration of child's visits to Pennsylvania alone suggest the child may have a signification connection with the Commonwealth. *See S.K.C.*, 94 A.3d at 413. The relationships child maintains when visiting Pennsylvania show that he without question maintains a significant connection. *See id.*

The nature of the child's visits to Pennsylvania demonstrate the significant connection that he shares with this Commonwealth. *Rennie*, 995 A.2d at 1222. While visiting Lancaster County, the minor child attends church with his Father and maternal grandparents. (J.S. 3-4). The minor child also spends time and does activities with Father's paramour, Father's friends, the child's best friend, and the child's friends in the area. (*Id.* at 4). These activities include, among others, going to the movies, skiing, visiting cultural centers, and going to the park. (*Id.*). Additionally, the minor child has extended family available in Lancaster and Pennsylvania including maternal aunt, maternal great aunt, and cousins. (*Id.* at 3). Collectively, therefore, minor child shares a

---

[3] Even assuming the parties followed the later-entered Order of Court dated October 7, 2011, child would still visit Pennsylvania over twenty (20) times a year and for a total period well in excess of forty (40) days each year.

10

relationship with persons and activities in this Commonwealth that demonstrate his significant connection to this state. *See S.K.C.*, 94 A.3d at 413.

The Court does not discount that minor child resides primarily in New Jersey where he receives regular care.[4] In Pennsylvania, however, the child shares relationships with persons and activities while visiting here on over twenty (20) occasions and for at least two (2) months in total each year. Accordingly, despite his primary residence in New Jersey, it is evident that the child shares a significant connection with this Commonwealth. Father, as discussed above, also shares a significant connection with this Commonwealth given that he currently resides and is employed here. This Court finds, therefore, that as both the child and Father share a significant connection with Pennsylvania, it maintains jurisdiction over the instant custody action under 23 Pa.C.S. § 5422.

## III.    Conclusion

For all of the above reasons, the Court respectfully requests that the Superior Court affirm the Order of Court dated June 10, 2015.

---

[4] The Court notes its concern with Mother's actions in requesting that jurisdiction be relinquished. In 2011, following a custody hearing, this Court made findings that Mother relocated to New Jersey without providing notice or information of the relocation to Father. (Findings of Court, Sept. 13, 2011). More recently, in August of 2014, Mother initiated a custody action in Hudson County, New Jersey. (Pl.'s Mem. 2). This alleged attempt to terminate Father's parental rights was denied following New Jersey's refusal to assume jurisdiction. (*Id.*). Almost immediately thereafter, Mother filed a Petition for Modification with this Court on August 22, 2014. (*Id.*). Mother's asserts no issue regarding the custodial schedule and in fact the parties agreed to continue the same custodial schedule. Accordingly, in consideration of Mother's actions and this Court's findings under § 5422 as discussed above, the Court is left only with concerns regarding Mother's attempts to dictate the venue of litigation and what effect it would have upon Father's relationship with the child.

11

BY THE COURT,

DAVID R. WORKMAN, JUDGE

Copies to:     Osvaldo Espinosa, Esq., 243 North Duke Street, 2nd Fl., Lancaster PA 17602
               Michael E. McHale, Esq., 53 North Duke Street, Ste. 1, Lancaster PA 17602

ATTEST:

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 8/7/2015

12

□ ORIGINAL

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA

CIVIL ACTION – CUSTODY

SAMUEL CRUZ,
      Plaintiff

      v.

ABIGAIL MALDONADO,
      Defendant

:
:
:
:
:
:
:
:

No. CI-11-01201

## ORDER

AND NOW, this 6th day of August, 2015, the Court submits this Opinion pursuant to Rule 1925(a)(2)(ii) of the Pennsylvania Rules of Appellate Procedure. Pursuant to Rule 1931(c) of the Pennsylvania Rules of Appellate Procedure, the Lancaster County Office of Prothonotary shall take all action necessary to transmit the record.

BY THE COURT,

DAVID R. WORKMAN, JUDGE

Copies to:    Osvaldo Espinosa, Esq., 243 North Duke Street, 2nd Fl., Lancaster PA 17602
              Michael E. McHale, Esq., 53 North Duke Street, Ste. 1, Lancaster PA 17602

ATTEST:

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 8/7/2015

13