J. S44015/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| V.G., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 276 EDA 2016 |
| | : | |
| A.G. | : | |

Appeal from the Order Entered December 23, 2015,
in the Court of Common Pleas of Philadelphia County
Family Court Division at No. 0C0801290

BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED DECEMBER 08, 2016**

Appellant, V.G. ("Father"), appeals from the order dated and entered on December 23, 2015, granting the motion filed by A.G. ("Mother") to transfer/relinquish jurisdiction of the custody matter involving their male child, E.G. ("Child"), born in April of 2008, to the Family Court of the State of New Jersey, pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 23 Pa.C.S.A. §§ 5401-5482.  Upon careful review, we reverse and remand.

The parties do not dispute the following factual and procedural history.[1]  In a custody order entered on July 11, 2014, the Philadelphia County Court of Common Pleas, Family Division, Judge Doris A. Pechkurow, permitted Mother to relocate to New Jersey with Child.  In a subsequent order entered on August 21, 2014, Judge Pechkurow awarded the parties shared legal custody, Mother primary physical custody during the school year, and Father partial custody during the school year on two of every three weekends.  The order also awarded Father primary physical custody of Child during the summer and winter breaks, and provided the parties primary physical custody on alternate holidays.  Pursuant to the order, Mother would bear more responsibility for transportation, as she relocated to New Jersey and created a significant distance between the parties' homes.

---

[1] The trial court's transmission of an incomplete record hindered our review of the order on appeal, as did the lack of an opinion from the trial court judge, who has retired.  Our inquiries with the Prothonotary of the trial court failed to produce Mother's motion to transfer/relinquish jurisdiction, which the trial court apparently has lost or misplaced.  The trial court has transmitted Father's response to Mother's motion in a supplemental record.  As Mother's motion is missing from the record, we glean the allegations in her motion from Father's response and the on-record oral argument on the motion.  We will not remand the matter for the inclusion of Mother's motion in the record and the preparation of a trial court opinion.  A new trial court judge assigned to the case would be unfamiliar and would have to prepare the opinion from a "cold" record.  We note only that Father attached Mother's motion to his brief as Appendix G, but we may not consider it, since it is not in the certified record. **See Commonwealth v. Preston**, 904 A.2d 1 (Pa.Super. 2006) (**en banc**).  Father's failure to ensure that the record was complete also delayed our disposition of the appeal. **Cf. In re T.S.M.**, 71 A.3d 251, 255 (Pa. 2013).  Although labeled as a Children's Fast Track case, the trial court order did not present specific custodial issues.

On September 30, 2015, Mother filed, **pro se**, a petition to transfer/relinquish jurisdiction of the custody case to Monmouth County, New Jersey, where she resides with Child. Mother asserted that Father now lives in Feasterville, Pennsylvania, which is near Philadelphia County, but located in Bucks County. Mother argued that, under the UCCJEA, the trial court in Philadelphia should relinquish jurisdiction and transfer the custody matter to Monmouth County, New Jersey, as neither Child nor the parties have any significant connection to the Commonwealth. Mother also alleged that Philadelphia County has become an inconvenient forum, so the trial court should transfer the custody matter to New Jersey under Section 5427 of the UCCJEA. Mother also cited Pa.R.C.P. 1910.2 and 1915.2 in support of the transfer of venue.[2]

Father responded that, pursuant to Section 5422(a)(1) of the UCCJEA, the trial court in Philadelphia retained exclusive, continuing jurisdiction as long as the child and at least one parent have an important or meaningful relationship to the Commonwealth, and that the connection to Philadelphia County was irrelevant. (**See** Father's Memorandum of Law in Support of Respondent's Opposition to Petitioner's Motion to Transfer Jurisdiction.) Father also argued that Mother's contention regarding Philadelphia County being an inconvenient forum was misplaced.

---

[2] Pa.R.C.P. 1910.2 involves support matters, not custody matters, and is not appropriate in the instant case. (**See** Father's brief at 20.)

On December 23, 2015, the trial court heard oral argument on Mother's motion. Father was present and represented by Attorney Michael Kuldiner. Mother appeared **pro se**. On that same date, the trial court entered the order granting Mother's motion, "releasing" jurisdiction of the custody matter to New Jersey.[3] On January 22, 2016, Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following issues for our review.

A. Whether the Trial Court committed an error of law and abused its discretion in improperly relinquishing and transferring jurisdiction over the custody matter in light of the Uniform Child Custody Jurisdiction and Enforcement Act[,] 23 P[a].C.S.A. § 5401 et seq. (specifically § 5422)?

B. Whether the Trial Court committed an error of law and abused its discretion in determining that Philadelphia was an inconvenient forum but New Jersey was not an inconvenient forum under Pa.R.C.P. 1915.2; governed by the factors set forth in the UCCJEA (specifically § 5427) and which was raised by Appellee [Mother]?

C. Whether the Trial Court committed an error of law and abused its discretion in transferring jurisdiction over the custody matter by failing to give proper weight to Appellant's [Father's] written response and argument to Appellee's [Mother's] Motion to Transfer Jurisdiction?

---

[3] On December 30, 2015, Father filed a motion for reconsideration. The trial court did not rule upon the motion.

D.  Whether the Trial Court committed an error of law and abused its discretion by making a ruling after only a 13[-]minute oral argument which constituted the Court and the parties interrupting each other?

E.  Whether, the Trial Court committed an error of law and abused its discretion in transferring jurisdiction over the custody matter based upon the "best interests" standard of 23 Pa.C.S.A. §5328 when that language was eliminated under the UCCJEA to prevent these considerations in determining proper jurisdiction?

Father's brief at 6.[4]

Our standard of review for decisions involving jurisdiction is as follows.

A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of discretion. Under Pennsylvania law an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.

*Wagner v. Wagner*, 887 A.2d 282, 285 (Pa.Super. 2005) (citation omitted).

---

[4] Father stated his issues somewhat differently in his concise statement. We, nevertheless, find his issues preserved for our review. *Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa.Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal).

We will address Father's issues together, as they are interrelated. Father first asserts that the trial court committed an error of law and/or abused its discretion in relinquishing jurisdiction to New Jersey because the trial court did not follow the requirements set forth in the UCCJEA, particularly Section 5422. (**See** Father's brief at 12-26.) Next, he contends that the trial court committed an error of law and abused its discretion in determining that Philadelphia was an inconvenient forum, but New Jersey was not an inconvenient forum under the factors set forth in Section 5427 of the UCCJEA and Pa.R.C.P. 1915.2. (**See** Father's brief at 20-26.) Father argues that the trial court failed to give proper weight to his written response and oral argument in opposition to Mother's motion. (**See** Father's brief at 26-27.) Additionally, Father contends that the trial court improperly made a ruling after only a 13-minute oral argument, which consisted of the court and the parties interrupting each other. (**See** Father's brief at 27-28.) Finally, Father urges that the trial court improperly applied a best interest standard under the Custody Act, 23 Pa.C.S.A. § 5328(a), to its consideration of Mother's motion, where the proper standard for transfer/relinquishment of jurisdiction under Section 5422 of the UCCJEA specifically does not include a best interest standard. (**See** Father's brief at 28-29.)

Section 5421 of the UCCJEA provides:

### § 5421.  Initial child custody jurisdiction

**(a)  General rule.--**Except as otherwise provided in section 5424 (relating to temporary

emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

(1)     this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

(2)     a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:

(i)     the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and

(ii)    substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships;

23 Pa.C.S.A. § 5421(a)(1)-(2).

Section 5402 of the UCCJEA defines "home state" as:

> The state in which a child lived with a parent or a person acting as a parent **for at least six consecutive months immediately before the commencement of a child custody proceeding.** . . . A period of temporary absence of any of the mentioned persons is part of the period.

23 Pa.C.S.A. § 5402 (emphasis added).

Section 5422(a) of the UCCJEA provides as follows.

**§ 5422.  Exclusive, continuing jurisdiction**

**(a)  General rule.--**Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:

(1)  a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships; or

(2)  a court of this Commonwealth or a court of another state determines

> > that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.
>
> > . . . .

23 Pa.C.S.A. § 5422(a).

Pursuant to Section 5427, a trial court may decline to exercise jurisdiction over a child custody dispute if it determines that it is an inconvenient forum under the circumstances of the case. Section 5427 identifies eight factors to consider in deciding whether it is appropriate to permit another state to exercise jurisdiction as the more convenient forum:

> (1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
>
> (2) the length of time the child has resided outside this Commonwealth;
>
> (3) the distance between the court in this Commonwealth and the court in the state that would assume jurisdiction;
>
> (4) the relative financial circumstances of the parties;
>
> (5) any agreement of the parties as to which state should assume jurisdiction;
>
> (6) the nature and location of the evidence required to resolve the

> pending litigation, including testimony of the child;
>
> (7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
>
> (8) the familiarity of the court of each state with the facts and issues in the pending litigation.

23 Pa.C.S.A. § 5427(b).

"The burden . . . is on a petitioner who would have a court in the home state decline to exercise its jurisdiction to show that the home state is an inconvenient forum and that another state would be a more appropriate forum." ***Joselit v. Joselit***, 544 A.2d 59, 62 (Pa.Super. 1988).  We review a trial court's decision to exercise or decline jurisdiction under Section 5427 for an abuse of discretion.  ***S.K.C. v. J.L.C.***, 94 A.3d 402, 414 (Pa.Super. 2014).

Rule 1915.2 of the Pennsylvania Rules of Civil Procedure provides in relevant part:

**Rule 1915.2.  Venue**

(a)    An action may be brought in any county

(1)(i)     which is the home county of the child at the time of commencement of the proceeding, or

(ii)    which had been the child's home county

- 10 -

within six months before commencement of the proceeding and the child is absent from the county but a parent or person acting as parent continues to live in the county; or

(2) when the court of another county does not have venue under subdivision (1), and the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with the county other than mere physical presence and there is available within the county substantial evidence concerning the child's, protection, training and personal relationships[.]

. . . .

(c) The court at any time may transfer an action to the appropriate court of any other county where the action could originally have been brought or could be brought if it determines that it is an inconvenient forum under the circumstances and the court of another county is the more appropriate forum. It shall be the duty of the prothonotary of the court in which the action is pending to forward to the prothonotary of the county to which the action is transferred certified copies of the docket entries, process, pleadings and other papers filed in the action. The costs and fees of the petition for transfer and the removal of the record shall be paid by the petitioner in the first instance to be taxable as costs in the case.

. . . .

**EXPLANATORY COMMENT--2008**

Subdivision (a) of Rule 1915.2 incorporates the categories of jurisdiction for initial custody determinations and temporary emergency proceedings in the Uniform Child Custody Jurisdiction and Enforcement Act at 23 Pa.C.S.A. §§ 5421 and 5424 as the venue provisions for these rules, restating them in rule form without change in substance. Subdivision (a) follows the policy of § 5471 of the Uniform Child Custody Jurisdiction and Enforcement Act, which provides that the provisions of the act "allocating jurisdiction and functions between and among courts of different states shall also allocate jurisdiction and functions between and among courts of common pleas of this Commonwealth."

Pa.R.C.P. 1915.2(a)(1)-(2), (c), and explanatory comment.

Rule 1915.1 defines "home county" as:

[T]he county in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, or in an institution, for at least six consecutive months. . . . A period of temporary absence of the child from the physical custody of the parent, institution, or person acting as parent shall not affect the six-month or other period[.]

Pa.R.C.P. 1915.1.

Father asserts that the trial court erred in its decision to relinquish jurisdiction to New Jersey, because Mother failed to prove that he and/or Child do not have a "significant connection" with this Commonwealth pursuant to Section 5422(a)(1). (Father's brief at 16-19.) Father argues that the Commonwealth has exclusive, continuing jurisdiction of the custody

matter under Section 5422(a)(1), as he continues to live in, and exercise his custodial time with Child in, the Commonwealth. Father states that he continues to live in the Commonwealth and exercise his custodial time with Child here. While Father has moved from Philadelphia County to nearby Bucks County, he contends that the county of his residence is not properly part of the Section 5422 inquiry. (*Id.* at 16-19.) Father asserts that his counsel set forth the significant connection that he and Child have to the Commonwealth in Father's response to Mother's motion, which the trial court admittedly did not read. (*Id.* 16-17.) He claims that the trial court improperly relied on the oral argument on the motion, which was punctuated by interruptions. (*Id.* at 17.) Father complains that the trial court made an abrupt ruling on the motion, which the judge was hearing his last day. (*Id.* at 17-18.)

This court has explained as follows.

> Under the plain meaning of section 5422(a)(1), a court that makes an initial custody determination retains exclusive, continuing jurisdiction until neither the child nor the child and one parent or a person acting as a parent have a significant connection with Pennsylvania *and* substantial evidence concerning the child's care, protection, training, and personal relationships is no longer available here. The use of the term "and" requires that exclusive jurisdiction continues in Pennsylvania until both a significant connection to Pennsylvania and the requisite substantial evidence are lacking. In other words, Pennsylvania will retain jurisdiction as long as a significant connection with Pennsylvania exists *or* substantial evidence is present.

***Rennie v. Rosenthol***, 995 A.2d 1217, 1220-1221 (Pa.Super. 2010) (footnotes omitted; emphasis in original).  With respect to the meaning of "significant connection," we stated,

> [P]ursuant to the plain and ordinary meaning of the phrase "significant connection," exclusive, continuing jurisdiction is retained under section 5422(a)(1) as long as the child and at least one parent have an important or meaningful relationship to the Commonwealth.  Accordingly, we must look at the nature and quality of the child's contacts with the parent living in the Commonwealth.

***Id.*** at 1221-1222 (footnote omitted).  In ***Rennie***, we concluded the custody matter had a significant connection to Pennsylvania because it was where her father lived; the child had a strong relationship with her father and visited him in Pennsylvania pursuant to a custody agreement; she visited her paternal grandparents and other paternal relatives in Pennsylvania; and she had friends who lived in Pennsylvania.  ***See id.*** at 1222-1223.  We, therefore, affirmed the trial court's order denying the mother's motion to relinquish jurisdiction.

In ***S.K.C.***, ***supra***, the child had resided with her parents in Mercer County, Pennsylvania, for the 12 years following her birth in May of 2000, and had attended elementary school through fourth grade in the Commonwealth.  ***S.K.C.***, 904 A.2d at 404-405.  In May of 2012, the child's father obtained primary custody of the child, and she then moved to Canada to reside with the father.  ***Id.***  She was enrolled in Pennsylvania Cyber Charter School for fifth and sixth grades.  ***Id.*** at 405.  This court determined

that the mother, who continued to reside in Mercer County, exercised partial physical custody, and the child spent more than three months each year in the Commonwealth. *Id.* at 413-414. She had a relationship with her family in Pennsylvania, and had friends in Pennsylvania. Thus, we concluded that the custody matter had a significant connection to the Commonwealth, and that the trial court properly found that it had exclusive, continuing jurisdiction over the matter pursuant to 23 Pa.C.S.A. § 5422. After examining the Section 5427 factors, this court also held that the father's argument, that the trial court abused its discretion in determining that Mercer County was not an inconvenient forum, lacked merit. *See id.* at 418.

Here, at oral argument, the following exchange occurred among the court and the parties:

> THE COURT: Petition for a change of venue. What kind of action is this?
>
> MR. KULDINER: Custody, Your Honor.
>
> THE COURT: And -- be seated. Both parties live in Philadelphia?
>
> [MOTHER]: No.
>
> [FATHER]: No.
>
> THE COURT: Where do you live?
>
> [MOTHER]: New Jersey.
>
> THE COURT: Where in New Jersey?

- 15 -

[MOTHER]:  Manalapan.

THE COURT:  How long have you been in Manalapan?

[MOTHER]:  For over a year.  We were allowed to relocate last September.

THE COURT:  By way of a petitioning this Court?

[MOTHER]:  Yes.

THE COURT:  Okay.  So who was it, Judge Joseph[] who permitted you to remove the child and yourself to New Jersey?

[MOTHER]:  -- Judge -- Pechkurow.

THE COURT:  Okay.  All right.

And where do you live now?

[FATHER]:  We recently moved to right on the border of Philadelphia in Feasterville.  About --

THE COURT:  Bucks County.

[FATHER]:  -- Bucks County.  And nine -- nine months ago.

THE COURT:  So, okay.  And who is the primary custodial parent?

[MOTHER]:  I am, Your Honor.

THE COURT:  Okay.  You've lived in New Jersey for over a year?

[MOTHER]:  Yes, way for over a year.  And the child, this is his second year attending New Jersey Elementary School.

THE COURT:  So why are we in Philadelphia, given that he's in Bucks County now and she's -- she's

relocated to New Jersey, which would seem to be the place where -- which would have the most interest in the welfare of that -- the well-being of that child?

MR. KULDINER:  Your Honor, if you had a chance to read my response to --

THE COURT:  No issue.

MR. KULDINER:  -- right.

THE COURT:  I don't read that stuff.

MR. KULDINER:  Right.  So here's the thing, this matters [sic] been in this courtroom for about six years, Your Honor.  The -- retains jurisdiction over the divorce.  The custody, Judge Pechkurow, says, "This Court retains jurisdiction."  My client just recently moved to Feasterville.

He has primary [physical custody] during the summer.  So in the end it's really a 50/50 custody.  There's significant connections to this area.  So it's not between counties.  It's between different states.

THE COURT:  So let me ask you this question.

MR. KULDINER:  Sure.

THE COURT:  You know, he's not coming back to Philadelphia except to go to [c]ourt.

MR. KULDINER:  Well the child actually goes to Sunday school in Philadelphia.

THE COURT:  Sunday school?

MR. KULDINER:  Right.

THE COURT:  Okay.  How old is the child?

MR. KULDINER:  Well --

How old [is] the child?

- 17 -

[FATHER]: Seven.

[MOTHER]: Seven and a half, Your Honor.

THE COURT: Seven and a half. So he goes to Sunday school. That doesn't count as --

MR. KULDINER: So this is a martial [sic] --

THE COURT: -- he lives with Dad in Bucks County during the summers?

MR. KULDINER: -- correct.

THE. COURT: Including this past summer?

MR. KULDINER: Every summer. Yes.

THE COURT: Okay.

How many summers have you been in Bucks?

MR. KULDINER: This is the past -- first summer, Your Honor.

[FATHER]: First summer.

THE COURT: First summer? Is Bucks your permanent residence now?

[FATHER]: Yes.

MR. KULDINER: This is a matter --

THE COURT: Well -- we don't have any business in this.

MR. KULDINER: -- but this is a matter between two states, Your Honor, not between counties. And the Court's [sic] say if there's child --

THE COURT: Yeah, but what I'm saying is this state, Pennsylvania, needs -- Pennsylvania, all right, there

is no Pennsylvania Domestic Relation.  Yes, there are two different states, but this county does not have any business in this matter.  The child resides in New Jersey.  Dad lives in another county.

MR. KULDINER:  In New Jersey --

THE COURT:  He's got this one.

MR. KULDINER:  -- Your Honor, I have case law.  It says where --

[MOTHER]:  We weren't on the --

MR. KULDINER:  -- the Courts in Pennsylvania allowed the Father to relocate primary custody to Canada.  The child was every other weekend in Pennsylvania.  The Courts, in 2004, to Superior Court say, and I'm -- case law, child has minimum contacts in Pennsylvania.

THE COURT:  What are the facts of the case?

MR. KULDINER:  I just told you.  So the [f]ather --

THE COURT:  You didn't tell me the facts.

[MOTHER]:  Your Honor?

MR. KULDINER:  -- filed for primary custody.

[MOTHER]:  Your Honor, may I present my case?

THE COURT:  You can't say that.

MR. KULDINER:  Sure.

[MOTHER]:  Your Honor?

THE COURT:  Hold on.  Hold on.  Please.  Both of you, all right?

MR. KULDINER:  This was taken out of the most recent --

THE COURT: Hold on, counsel.

MR. KULDINER: -- sure.

THE COURT: Have a seat, please. Let me read.

[MOTHER]: Okay.

MR. KULDINER: Here's two more cases.

COURT CRIER: For His Honor?

MR. KULDINER: Yes.

THE COURT: This -- yeah, factors -- this is the case that you're talking about where the [m]other and [f]ather had some connection to Canada.

They ran a lodge up there. Now we don't have any facts that are similar to that here. Do we? We simply have a [m]other who used to be a resident of Philadelphia.

And I assume you used to be in Philadelphia. She did what she was required to do to remove herself and the child to another jurisdiction.

MR. KULDINER: Right.

THE COURT: Jurisdiction follows the child to New Jersey.

MR. KULDINER: There's a Court order that says, "Jurisdiction remains in Philadelphia." There's six years of history, Your Honor, here. This --

[MOTHER]: Not six -- Your Honor, may --

MR. KULDINER: -- Your Honor, I'm looking at a summary.

COURT RECORDER: One at a time, please.

[MOTHER]:  -- I talk to --

MR. KULDINER:  Your Honor, may I present the summary?

[MOTHER]:  -- may I present my case, because I filed for the motion.  May I please present my case?

THE COURT:  You can.

[MOTHER]:  Because he keeps interrupting me.

THE COURT:  Counsel, be seated.

[MOTHER]:  Your Honor, this case goes back to many, many years.  We had 50/50 shared physical custody.  Father never exercised his physical -- physical custody.  A Judge allowed us to relocate, because the Father never exercised.

THE COURT:  Was he -- was he present during the relocation petition hearing?

[MOTHER]:  Yes, of course.

THE COURT:  Okay.

[MOTHER]:  Of course.  It was a two year -- it [sic] a two year here.  The child has been attending Manalapan School, second year in  -- a [sic] child has his pediatrician visits, his after school activities, swimming, tennis, all of his school --

THE COURT:  Everything's in New Jersey.  I got it.

[MOTHER]:  -- everything is in New Jersey.

THE COURT:  I got it.

[MOTHER]:  Also we're having a problem now.  Our exchange takes place on Friday night at 7:00.  I did ask the Father to move it by an hour, because of the traffic in New Jersey.  Unfortunately, a Judge in -- when she entered an order --

- 21 -

THE COURT:  What Judge?

[MOTHER]:  Pechkurow.  She does now [sic] know about the traffic.  Father said, "Absolutely not," without any reason.  Unfortunately, I had -- I had an accident.

I cannot drive on highways right now.  I'm afraid.  And I have to rely on my husband, you know, to drop off the child.

THE COURT:  Let me ask you this question.

[MOTHER]:  Right.

THE COURT:  Do you drive to Pennsylvania?

[MOTHER]:  No, no, I -- no, no, no.  I ask mention [sic] -- my husband right now.  I only -- drive locally.  I had an accident.  And I have a treatment right now.  I'm undergoing treatment.

THE COURT:  And whose custody is it during these Friday visits?

[MOTHER]:  We drive a child to the extension --

THE COURT:  Whose custody is it?

[MOTHER]:  -- what do you mean?

THE COURT:  Child is being transferred for Father's custody?

Why aren't you driving?

[FATHER]:  Your Honor, I am driving.  We are picking up child.

THE COURT:  Where?

[MOTHER]:  In New Jersey.

- 22 -

[FATHER]: From New Jersey exit eight. So I'm driving all the way from PA to New Jersey, pick up [Child], my son --

THE COURT: That's not much of a drive. Be seated.

Both of you, be seated, please.

[MOTHER]: And then --

THE COURT: You're in Bucks County. It's a little hop, skip, and jump up the turnpike to get to six, seven, and eight. Okay? It's not a long way. Manalapan is near what?

[MOTHER]: Manalapan is right next to Marlboro. It's next to Sayreville on the -- when you go to Garden State to go to New York.

THE COURT: So it's on the way to that --

[MOTHER]: What next [sic] to Freehold? Do you know where Freehold is?

THE COURT: -- where?

[MOTHER]: Freehold.

THE COURT: I know Freehold.

[MOTHER]: Long Brand. Right in the area.

THE COURT: So to about eight, eight A. Somewhere around there.

[MOTHER]: Yes. Yes. Yes. And then we pick up a [sic] child on Sunday night from his Father's home.

THE COURT: Which is where?

[MOTHER]: In Bucks County. We do almost all of the driving. And now I have to rely on my husband, because I can't drive on highways.

MR. KULDINER:  Your Honor, can I --

[MOTHER]:  And I ask [sic] Father to move it on Friday night from 7:00 P.M. to 8:00 P.M., because my husband --

THE COURT:  That's not before me.

[MOTHER]:  -- I understand, but what I'm trying to say all of these -- all of these issues are not -- we are not able to resolve in Philadelphia Court, because the Judge before he did not -- she did not know the traffic in New Jersey and everything.

MR. KULDINER:  -- but that's not the standard, Your Honor.

[MOTHER]:  But --

MR. KULDINER:  The standard is --

[MOTHER]:  -- can I please least [sic] my factors.  I read my, you know, there was also --

THE COURT:  Be seated.

[MOTHER]:  -- I'm sorry.  There are a number of factors that I want to explain to you that support my --

THE COURT:  This is not [a] support case.

[MOTHER]:  -- but the --

THE COURT:  I'm not [a] support Judge.  I don't have any jurisdiction over that.

[MOTHER]:  -- no, no, no, supporting my motion I meant.

THE COURT:  Oh.

[MOTHER]: All the factors that supporting [sic]. And under this law there's a general rule. And the general rule says, "A Court of this the [sic] Commonwealth determined that neither the child nor the child and one parent, nor the child and a person acting as a parent, has a significant connection with the -- with this -- with this Commonwealth, and that substantial evidence is no longer available in this Commonwealth," which is we move [sic] to New Jersey.

He move [sic] to Bucks County. There are also a number of factors, it's called inconvenience factors. The first inconvenience factor is -- I'm sorry. The length of a time the child -- the child has resided outside this Commonwealth.

He has been living primarily from September until end of June in New Jersey. And he's going to New Jersey school. The distance between the Court of Commonwealth and the Court that stayed, would assume jurisdiction, the distance from me to this Court is over two hours. From [Father's] from the -- from child's Father to this Court is about 40 minutes. As well --

THE COURT: Thank you.

Anything else?

Why shouldn't I grant her petition to change the venue, which is where the child lives in New Jersey?

MR. KULDINER: Okay.

THE COURT: Show me, because Philadelphia has no connection --

MR. KULDINER: Sure.

THE COURT: -- to this case.

- 25 -

MR. KULDINER: Your Honor, as you heard she did cite the statue [sic] about connections with the Commonwealth. As you -- the statute doesn't take connections for the county where the case originated.

Judge Pechkurow wrote specifically, "This jurisdiction, this Court maintains jurisdiction and retains jurisdiction." Your Honor, my client has a child --

THE COURT: And when was that?

MR. KULDINER: -- that was about a year ago.

THE COURT: And was that before or after the relocation petition?

MR. KULDINER: That was after three years of hearing this case, Your Honor, with two different Judges. Just this case has been --

THE COURT: Was that before --

MR. KULDINER: -- in front of Court --

THE COURT: -- or after the relocation petition was granted?

MR. KULDINER: That was at the time --

[MOTHER]: Be --

MR. KULDINER: -- the order, it says, "This Court retains jurisdiction," Your Honor. My client has the child almost every weekend except the third weekend of every month. He's got the child every day over the summer. Essentially it's 50/50 custody. The statute says, "Minimal contacts with the Commonwealth" not the county, Your Honor.

THE COURT: Excuse me. During the school year your client has what?

MR. KULDINER: The whole summer and every weekend during the year.

[MOTHER]: Actually he -- it says that he has primary custody in the summer, but he did not give me a [sic] child at all. Primary is not full custody. He's in contempt as well.

MR. KULDINER: Your Honor, may I present this?

[MOTHER]: And these are all of the issues that unfortunately he is not civil. And we are not able to resolve -- result [sic] it normally. And --

MR. KULDINER: She could --

[MOTHER]: -- I think that --

MR. KULDINER: -- file the motion to modify.

[MOTHER]: -- New Jersey -- New Jersey would be a much better jurisdiction since the child is attending school there. All of his activities are there.

Everything is there. And nobody lives in Philadelphia. We have no ties to Philadelphia.

THE COURT: Philadelphia is not in this anymore.

[MOTHER]: Right.

THE COURT: Jurisdiction is in New Jersey. And that's where this case is.

MR. KULDINER: Your Honor, if you take a look at the case law it says that. [sic] The Superior Court ruled. [sic]

My client has custody of him for one day a year it stays in -- it stays in Commonwealth. It's not about Philadelphia.

THE COURT: Thank you. You're adjourned. Here's your stuff. Okay? I get paid to --

- 27 -

MR. KULDINER: I'm filing an appeal. I mean this is ridiculous, Your Honor.

THE COURT: Great. Go ahead.

MR. KULDINER: The case law is clear.

THE COURT: You'll get another Judge, because today is my last day.

MR. KULDINER: Thank you.

THE COURT: See ya.

MR. KULDINER: All right. Have a good holiday.

COURT CLERK: Parties, please step out.

THE COURT: If I make a decision that's what I'm making.

MR. KULDINER: All right.

THE COURT: It sounds like the jurisdiction --

MR. KULDINER: But there's case law. And you need to apply that.

THE COURT: -- okay.

Notes of testimony, 12/23/15 at 4-20.

Thus, at oral argument, Mother supported her motion with evidence that she had relocated Child to reside primarily in New Jersey with her pursuant to the Philadelphia trial court order entered on July 11, 2014. The parties did not dispute that Child resides with Mother in New Jersey during the school year, and resides in the Commonwealth with Father on two of every three weekends and in the summer.

The first question before the trial court was whether Father's exercise of primary physical custody during the summer and partial physical custody two of every three weekends was a significant connection to the Commonwealth. Pursuant to **Rennie** and **S.K.C.**, the trial court abused its discretion in finding that the custody matter no longer had a significant connection to the Commonwealth.

The second question before the trial court was whether it would be proper to transfer venue of the custody matter to New Jersey under Section 5427 of the UCCJEA, as the Commonwealth had become an inconvenient forum. We agree with Father that the trial court judge gave only a brief consideration of this case, perhaps because it was his last day on the bench. It also is apparent that the trial court admittedly did not review Father's argument concerning the controlling case law set forth in his memorandum in opposition to Mother's motion. The trial court judge did not engage in an analysis of the Section 5427 factors, nor could he have done so, as Mother failed to support her motion with any evidence regarding all eight of the factors.

Accordingly, we find that the trial court abused its discretion in granting Mother's motion to transfer/relinquish jurisdiction to New Jersey.

We, therefore, are constrained to reverse and remand the matter to the trial court for further proceedings.[5]

Order reversed and remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2016

---

[5] Because we reach this result, we need not address Father's remaining arguments concerning the trial court's consideration of Pa.R.C.P. 1915.2, and its improper consideration of Child's best interests.