J-A15044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JESSICA E. TARN N/K/A JESSICA E. NOVAK | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 115 WDA 2022 |
| KENNETH BAKER | : | |

Appeal from the Order Entered December 22, 2021
In the Court of Common Pleas of Westmoreland County Domestic
Relations at No(s):  No. 1103 of 2010-D

BEFORE:  BOWES, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED: October 20, 2022**

Jessica E. Tarn, n/k/a Jessica E. Novak ("Mother"), appeals from the trial court's order which relinquished jurisdiction of this child custody action to a Missouri court, where Kenneth Baker ("Father") now resides.  We affirm.

Mother and Father are the parents of B.B. ("Child"), a son who was born in Pennsylvania in August 2007.  *See* N.T., 12/22/21, at 7.  In 2010, Mother and Father, who never married, stopped living together.  *See id*. at 46. Mother obtained a Protection from Abuse ("PFA") order against Father and filed a custody complaint.  *See id*. at 34.  Mother and Father entered into a consent order that granted Mother primary physical custody of Child.  *See* Trial Court Order, 10/4/10.  Mother and Father later reconciled and despite the custody order lived together with Child on and off at Mother's parents' ("Maternal Grandparents'") residence.  *See* N.T., 12/22/21, at 6-7.

Mother and Father separated again in 2016. *See id*. at 8. Father filed a motion to modify the consent order. *See* Father's Petition to Modify Custody Order, 12/22/15. Following conciliation, the trial court entered an order ("the custody order") maintaining Mother's primary physical custody of Child during the school year and Father's partial physical custody of Child on most weekends and other agreed-upon periods. During the summer, Mother and Father shared custody in alternating week-long blocks. The custody order prohibited either parent from relocating with Child without the agreement of the other or approval of the trial court, but permitted them to agree upon different periods of custody or parenting arrangements. *See* Custody Order, 2/10/16, at 3-4.

After the entry of the custody order, the parties reconciled and lived with Maternal Grandparents. *See* N.T., 12/22/21, at 9. Mother and Father dispute what occurred next. Mother claimed that Father took Child to his parents' ("Paternal Grandparents'") residence for a week in June 2019, as the custody order permitted, but refused to return Child when the week ended. *See id*. at 10. Father claimed that he moved out of Mother's parents' home in June 2019, due to Mother's drug abuse,[1] and volatility between him and Maternal Grandfather, and between Mother and Maternal Grandmother. *See id*. at 57-58, 69, 73-76, 82. He said that when he told Maternal Grandmother

---

[1] Mother testified that she and Father were both heroin users. *See* N.T., 12/22/21, at 19.

he was leaving, Child insisted upon leaving with him, and they moved to live with Paternal Grandparents. *See id*. at 57-58, 74-75. Regardless which version of events was more accurate, the parties agree that Mother has not seen Child since Father took Child from the home in June 2019. *See id*. at 22, 61.

Mother and Father blamed each other for Mother's lack of contact with Child. Mother admitted that she did not call Father, Child, or Paternal Grandparents after Child left, *see id*. at 25, but asserted she was afraid of Father and has been since she obtained a PFA order against him in 2010. *See id*. at 13. To avoid dealing with Father, Mother testified that she messaged Child on Facebook, but never got a response. *See id*.[2] Father claimed that Mother was on drugs at the time,[3] changed cell phones frequently, making her difficult to contact, and she made no attempts to contact him or Child. *See id*. at 57-58, 69, 73-76, 82.

In July 2019, Maternal Grandmother drove to Paternal Grandparents' residence and attempted to pick Child up to take him to an eye doctor's appointment. She testified that Father prevented Child from leaving with her. *See id*. at 40-41. Father testified that when Maternal Grandmother came in

_____

[2] Father testified that Child does not have a Facebook account. *See* N.T., 12/22/21, at 63.

[3] Mother testified that she had been sober for seven months at the time of the hearing, *i.e.*, since approximately May 2021. *See* N.T., 12/22/21, at 19.

July 2019 to take Child to the eye doctor, Child said he did not want to go because he was afraid Maternal Grandmother would not return him to Father. *See id*. at 80.

Father testified that Child called Mother multiple times to try to visit her after they moved out but Mother did not answer. *See id*. at 60, 75. Father asserted that he also tried to call Mother several times, but she did not answer, nor did she attempt to call him or Child by phone or reach out to Father on his Facebook account. *See id*. at 60-62, 75-76.

In August 2020, Father, Child, and Paternal Grandparents moved to Pulaski County, Missouri without notifying Mother or notifying the trial court as required by the consent order[4] (although Father said he tried to call her). *See id*. at 57, 65-66, 71, 76-77. Father testified that Child has since attended eighth grade and part of ninth grade in Missouri, where he has an eye doctor, friends, and many relatives with whom he is close. *See id*. at 47-50, 54-55, 61-62, 85. Father testified that Child does not want to return to Pennsylvania and has threatened to run away if forced to return. *See id*. at 60-62, 65-66, 75-76. Father testified that Mother did not attempt to contact him between the time he moved out with Child in June 2019 and the time he moved to Missouri in August 2020. *See id*. at 62.

---

[4] The consent order required a party proposing relocation to comply with 23 Pa.C.S.A. § 5337(c)(1), (2)(i), which requires notification of relocation to every other individual who has custody rights to a child by written notice sent by certified mail, return receipt requested.

In September 2020, Maternal Grandmother saw a notice in the newspaper that Paternal Grandparents sold their house in Pennsylvania. *See id*. at 39. She told Mother about the notice in late December 2020. *See id*. at 22. With research help from family members, Mother learned in August 2021, that Father and Child had moved to Missouri. *See id*. at 15, 26, 39.

As of December 2021, neither Mother nor Maternal Grandparents had seen Child since he and Father left the shared family home in June 2019, other than the time Maternal Grandmother attempted to take Child to a doctor's appointment. *See id*. at 21-22, 42, 61, 81. Mother testified that Child called her sometime after he left Paternal Grandparents' home, but Father interrupted the call and screamed at her.[5] *See id.* at 13-14. Mother did not call Father, Child, or Paternal Grandparents after Child left in June 2019, and did not go to see Child at the karate studio where she knew he studied. *See id*. at 21-22, 25, 30-31.

On October 27, 2021, Mother filed an "Emergency Petition for Special Relief for Custody/Motion for Contempt" ("Emergency Petition"), stating that Father took Child to Missouri without her consent or court approval in violation

---

[5] Mother stated she "tried to visit" but Paternal Grandmother "would not let [her] on [their] property" and "would threaten [her] many times" and "[i]f [Mother] even went near their house they would call the police on [Mother]." N.T., 12/22/21, at 17. Mother acknowledges that she had assaulted Paternal Grandmother sometime prior to the parties' breakup in June 2019, resulting in pending charges. *Id*. at 31.

of the custody agreement.  ***See*** Emergency Petition, 10/27/21, at 3 (unnumbered).  The trial court issued an order directing that Child be returned to Mother's custody, and also scheduled a hearing on Mother's petition.  Father did not return Child to Pennsylvania, but instead filed a petition for special relief objecting to the trial court's exercise of jurisdiction over Mother's petition and requesting permission to testify from out of state by telephone.  The trial court scheduled a telephone hearing on the competing petitions and did not order that Child be returned to Pennsylvania in advance of the hearing.

On December 22, 2021, the trial court convened a telephone hearing. On December 27, 2021, the trial court dismissed Mother's Emergency Petition and vacated its October 27, 2021, order requiring Child's return to Mother's custody.  The trial court granted Father's petition and relinquished jurisdiction to Pulaski County, Missouri, based upon its finding under 23 Pa.C.S.A. § 5422 of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"),[6] that Pennsylvania no longer had exclusive, continuing jurisdiction over the custody determination.  ***See*** Memorandum and Order of Court, 12/27/21, at 1-3 (unnumbered).  Mother timely filed a notice of appeal and she and the trial court complied with Pa.R.A.P. 1925.

Mother presents the following issues on appeal:

---

[6] ***See*** 23 Pa.C.S.A. §§ 5401-5482.

I. Whether the trial court erred in finding that it lacked exclusive, continuing jurisdiction pursuant to 23 Pa.C.S.A. [§] 5422?

II. Whether the trial court erred in transferring custody jurisdiction of this [c]ase from Westmoreland County, Pennsylvania to Pulaski County[], Missouri?

III. Whether the trial court erred in granting Father's Petition for Special Relief?

IV. Whether the lower court erred in vacating the order dated October 27th, 2021, requiring the immediate return of the child to Pennsylvania?

V. Whether the trial court erred in its dismissal of Mother's Emergency Petition . . .?

Mother's Brief at 5 (reordered for clarity).[7]

Mother's first three issues are intertwined, so we address them together. Mother contends that Pennsylvania has exclusive, continuing jurisdiction over the custody determination, and the trial court should not have ceded custody to Missouri. *See* Mother's Brief at 11-14. Mother stresses that Child has a significant connection to Pennsylvania, having lived in Pennsylvania for twelve years as compared to only fifteen months in Missouri. *See id*. at 13. She also argues Father should not be rewarded for unilaterally taking Child to Missouri in violation of the custody order, thereby interfering with her primary custody. *See id*. at 13-14.

---

[7] Father did not file a brief in this case.

Mother's claim challenges the trial court's determination that it did not have exclusive, continuing jurisdiction over the custody matter in this case. A trial court's decision of whether it possesses exclusive, continuing jurisdiction under section 5422 is a pure question of law and therefore subject to *de novo* review under a plenary standard. **See S.K.C. v. J.L.C.**, 94 A.3d 402, 406 (Pa. Super. 2014). **See also B.J.D. v. J.L.C.**, 19 A.3d 1081, 1082 n.1 (Pa. Super. 2011)) (stating that a trial court's decision about whether it possesses subject matter jurisdiction under Section 5422 is purely a question of law).

There is no dispute that the trial court's initial exercise of jurisdiction over the parties' custody matter in 2010 and 2016 was valid. Therefore, pursuant to subsection 5422(a) of the UCCJEA, Pennsylvania had exclusive, continuing jurisdiction over the custody determination unless and until it was divested of jurisdiction. **See** 23 Pa.C.S.A. § 5422(a). Accordingly, the only jurisdictional question before us is whether Pennsylvania retained exclusive, continuing jurisdiction after Father and Child moved to Missouri in August 2020.[8]

---

[8] The operative date to determine jurisdiction was October 27, 2021, which was the date Mother filed her Emergency Petition. **See T.D. v. M.H.**, 219 A.3d 1190, 1198 (Pa. Super. 2019) (directing the court to examine the parents' and child's relationship to Pennsylvania for jurisdictional purposes as of the date a party files a motion to modify custody in Pennsylvania).

The relevant provision of the UCCJEA provides as follows:[9]

**§ 5422. Exclusive, continuing jurisdiction**

(a) **General rule**.--Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:

> (1) a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships[.]

23 Pa.C.S.A. § 5422(a)(1).[10]

This Court has observed that subsection "5422(a)(1) contains two prongs, a 'significant connection' prong and a 'substantial evidence' prong, both of which must be satisfied in order for Pennsylvania to lose exclusive, continuing jurisdiction." ***J.S. v. R.S.S.***, 231 A.3d 942, 948 (Pa. Super. 2020)

---

[9] Subsection 5422(a)(2) involves a scenario where neither the parent nor the child presently lives in the Commonwealth. ***See*** 23 Pa.C.S.A. § 5422(a)(2). Subsection 5422(a)(2) is not applicable because Mother lives in Pennsylvania.

[10] The UCCJEA governs interstate custody disputes. The statute's purpose "is to avoid jurisdictional competition, promote cooperation between courts, deter the abduction of children, avoid relitigating custody decisions of other states, and facilitate the enforcement of custody orders of other states." ***A.L.-S. v. B.S.***, 117 A.3d 352, 356 (Pa. Super. 2015) (internal citation omitted).

(internal citation omitted). Stated another way, "Pennsylvania will retain jurisdiction as long as a significant connection with Pennsylvania exists or substantial evidence is present." ***Rennie v. Rosenthol***, 995 A.2d 1217, 1221 (Pa. Super. 2010) (footnote and emphasis omitted). This is true even if the child acquires a new home state. ***See*** 23 Pa.C.S.A. § 5422, cmt.

Although the UCCJEA does not define the term "significant connection," this Court has interpreted "the clear language" of the statute as including a scenario where "one parent resides and exercises parenting time in the state and maintains a meaningful relationship with the child." ***Rennie***, 995 A.2d at 1222. The comments to the UCCJEA support this interpretation, indicating that "[i]f the relationship between the child and the person remaining in the state with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist." 23 Pa.C.S.A. § 5422, cmt. 1.

The trial court found that Pennsylvania no longer has exclusive, continuing jurisdiction in this case because Child does not have a significant connection to Pennsylvania, and virtually all the evidence and witnesses that would be needed for trial are in Missouri. ***See*** Memorandum and Order of Court, 12/27/21, at 2-3. In support of its no "significant connection" determination, the trial court found that Mother has exercised no custody time with Child for more than two years, including the fourteen months before Father and Child left Pennsylvania in August 2020, and more than one year

thereafter; Child lived exclusively in Missouri for the fifteen months preceding Mother's Emergency Petition; Child has attended school in Missouri since the beginning of the 2020-21 school year; and Child's medical providers are in Missouri. *See id*. at 3 (unnumbered). Concerning the "substantial evidence" prong, the court found that virtually all of the evidence and witnesses that would be needed for trial are in Missouri. *See id*.[11]

Based on these facts, we uphold the trial court's assessment that Child's prior connection to Pennsylvania became attenuated over time. Mother and Child did not have a meaningful relationship at the time Mother filed her Emergency Petition. Although some witnesses and evidence exist in Pennsylvania regarding Child's history, the evidence concerning his current best interests is in Missouri. Accordingly, we find no error of law in the trial court's conclusion that Child no longer had a significant connection to Pennsylvania and substantial evidence concerning Child's care, protection, training, and personal relationships is no longer available in Pennsylvania. *See Rennie*, 995 A.2d at 1222; 23 Pa.C.S.A. § 5422, cmt.[12]

---

[11] The trial court recognized that Father did not give notice of his relocation to Missouri but emphasized that Mother failed to take any action to maintain a relationship with Child for more than two years. *See* Memorandum and Order 12/27/21, at 3.

[12] We note that other courts interpreting the UCCJEA's "significant connection" provision also focus on whether parenting time has been exercised in the state. *See*, *e.g.*, *Griffith v. Tressel*, 925 A.2d 702, 712-13 (N.J. Super. 2007) (collecting cases that assess "significant connection" by examining

*(Footnote Continued Next Page)*

Mother cites **S.K.C** for the proposition that the trial court's transfer of jurisdiction to Missouri rewards Father for his behavior by unilaterally relocating and by withholding Child from Mother. We acknowledge that this Court has considered the conduct of the parent outside Pennsylvania and "refuse[d] to incentivize contemptuous behavior on the part of a litigant." **S.K.C.**, 94 A.3d at 412-13. However, we find **S.K.C.** distinguishable.

In **S.K.C.**, a father took his child from Pennsylvania, where he, the mother, and their child resided, to Canada and then refused for five months to comply with a custody order that required him to allow the mother to bring the child to Pennsylvania once per month. This Court affirmed the trial court's determination that Pennsylvania maintained exclusive, continuing jurisdiction. We refused to transfer jurisdiction to Canada which would in effect reward the father for interfering with the mother's active attempts to visit with her child in Pennsylvania. **See S.K.C.**, 94 A.3d at 412-14.

Mother here knew in June 2019, that Child was with Father and did not make any attempt to retrieve him from Father or file an emergency petition alleging violation of the custody order. She took no legal action for more than two years, which included a span of nearly one year **after** Maternal Grandmother told her in December 2020, that Father's parents, with whom

---

whether parenting time was exercised in the state asserted to have exclusive, continuing jurisdiction).

he and Child resided, had sold their house. As the trial court stated, Mother here "failed to take any action to maintain a relationship with her son for over two years." *See* Trial Court Opinion, 2/16/22, at 3. For these reasons, *S.K.C.* does not support Mother's claim.

The trial court declined to hold Father in contempt for willfully violating the custody order. Mother and Father had separated and reconciled multiple times, and largely disregarded the custody order (and its predecessor) in practice. *See* Trial Court Opinion, 2/16/22, at 9. The record supports the court's decision. The court credited Father's testimony that Mother did not answer or return his call or Child's after they left and attempted to contact her prior to moving to Missouri. *See id*. at 8-9. Additionally, even by Mother's own testimony, she did almost nothing to contact Child or attempt to regain custody of him. *See id*. at 7-10. Further, Mother abused drugs for the first year and one half after Child left, and failed to engage Child when Father was not around. *See id*. Under the circumstances, we agree that it was "plausible for Father to believe that Mother abandoned her child and did not wish to continue exercising custody of the child, as she hadn't done so in over two years." Trial Court Opinion, 2/16/22, at 9.

In her fourth issue, Mother asserts that the trial court erred by vacating the order of October 27, 2021, requiring the immediate return of Child to Pennsylvania. However, Mother's argument about the order of October 27, 2021, is confined to one sentence in which she disagrees with the trial court's

assessment that Mother had omitted facts in her Emergency Petition and that no emergency ever existed. *See* Trial Court Opinion, 2/16/22, at 7-8 (stating that Mother had no contact with Child for more than two years prior to the filing of the Emergency Motion, and for a substantial period was unable to provide a drug-free environment for Child).

Accordingly, Mother waived her fourth issue by failing to provide any discussion of the claim with citation to relevant authority. *See B.S.G. v. D.M.C.*, 255 A.3d 528, 535 (Pa. Super. 2021); *see also* Pa.R.A.P. 2119(a).[13]

Mother's fifth and final issue asserts in a single sentence that the trial court erred in dismissing her Emergency Petition and incorporates her fourth argument by reference, a practice we do not endorse. Mother disagrees with the trial court's assessment that Father's violation of the order was not willful, emphasizes that Father does not dispute that he moved to Missouri with Child without filing a petition for relocation in the trial court, and contends she did not abandon Child but feared Father, as demonstrated by her receipt of a PFA order against him in 2010. *See* Mother's Brief at 15-16.

Mother fails to develop her claim by omitting any discussion of supporting case law regarding contempt orders and neglecting to discuss the law in relation to her claim. Accordingly, she has waived her issue. *See*

_____

[13] Even were Mother's claim reviewable, given our determination that Pennsylvania does not have exclusive and continuing jurisdiction over the custody determination, we would not find that the trial court erred in vacating its order requiring Child's immediate return to Pennsylvania.

**B.S.G.**, 255 A.3d at 535 (holding that an appellant waives a claim by failing to provide any discussion of the claim with citation to relevant legal authority); Pa.R.A.P. 2119(a).[14]

---

[14] Even if we were to address Mother's argument concerning contempt, it would not merit relief. Our review of contempt orders is limited to determining whether the trial court abused its discretion in declining to make a finding of contempt. **See E.B. v. D.B.**, 209 A.3d 451, 469 (Pa. Super. 2019). Although Pennsylvania lost its jurisdiction under the UCCJEA, it retained its jurisdiction to enforce the 2016 order through civil contempt. **See Com. ex rel. Taylor by and Through Taylor v. Taylor**, 480 A.2d 1188, 1189 (Pa. Super. 1984) (holding, under prior version of UCCJEA, that the trial court may enforce its prior custody order if validly entered and not modified by a court in another jurisdiction, even if it lost jurisdiction to enter a new order or modify the order).

We discern no abuse of discretion in the trial court's conclusion that Father did not willfully violate the custody order based upon his belief that moving to Missouri would not disrupt Mother's custody of Child because she had made no attempts to exercise that custody for more than one year before the move to Missouri. Additionally, although Father did not file a notice of relocation in the trial court, the Custody Act, 23 Pa.C.S.A. §§ 5321-5340, does not require the trial court to find a parent in contempt upon a failure to provide reasonable notice of a proposed relocation. **See** 23 Pa.C.S.A. § 5337(j)(5) (providing that a court "**may** consider a failure to provide reasonable notice of a proposed relocation as . . . a ground for contempt and the imposition of sanctions against the party proposing the relocation[.]") (emphasis added). The trial court found that it was not Father's actions that caused Mother's lack of continuing involvement with Child, and that the parties had not previously abided by the custody order that is the focus of Mother's assertion of contempt. Thus, we do not find that the trial court abused its discretion in dismissing Mother's contempt petition.

Based on the foregoing, we affirm the trial court's December 27, 2021, order relinquishing jurisdiction over the custody case to the court of Pulaski County, Missouri.[15]

Order affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2022

---

[15] We emphasize that our decision affirms the decision of the trial court to transfer jurisdiction over this custody matter to Missouri. Nothing in our decision precludes Mother from pursuing custody in the Missouri court; we simply affirm the trial court's decision that Pennsylvania no longer retains exclusive, continuing jurisdiction over this custody matter.